IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSHUA ATCHLEY, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ASTRAZENECA UK LIMITED, *et al.*, <br><br> Defendants. | No. 1:17-CV-02136 (RJL) |

**DECLARATION OF CHRISTOPHER N. MANNING, ESQUIRE,
IN SUPPORT OF FOREIGN DEFENDANTS' MOTION TO DISMISS
ALL CLAIMS FOR LACK OF PERSONAL JURISDICTION**

I, CHRISTOPHER N. MANNING, ESQ., hereby declare as follows:

1. I am a partner in the law firm of Williams & Connolly LLP and a member of the Bar of this Court. I am one of the counsel of record in the above-captioned action representing Defendants Pfizer Inc., Pfizer Enterprises SARL, Pfizer Pharmaceuticals LLC, Pharmacia & Upjohn Company LLC, and Wyeth Pharmaceuticals Inc. (collectively, the "Pfizer Defendants"). I submit this declaration in support of Foreign Defendants' Motion to Dismiss All Claims for Lack of Personal Jurisdiction.

2. Paragraph 284 of the Amended Complaint includes a chart listing Pfizer Enterprises SARL as the supplier on three contracts: Contract Nos. 40/2007/503 (Depo-Provera), 40/2005/402 (Solu-Medrol), and 40/2006/683 (Xyntha).[1]  AC ¶ 284 [ECF No. 67].

---

[1] The chart lists two contracts with No. 40/2006/683, but it lists Pfizer Enterprises SARL only as a supplier on the contract for Xyntha. AC ¶ 284.

3. Paragraph 279 of Plaintiffs' original Complaint also listed Pfizer Enterprises SARL as the supplier on Contract No. 40/2011/446 (Solu-Medrol). Compl. ¶ 279 [ECF No. 1].

4. Attached as Exhibit 1 is a true and correct copy of Contract No. 40/2011/446 for Solu-Medrol, signed by Zaid Madanat on behalf of Pfizer Enterprises SARL.

5. The Pfizer Defendants have attempted to locate Contract Nos. 40/2005/402 for Solu-Medrol and 40/2007/503 for Depo-Provera but have not located such contracts as of the date of this declaration.

6. Attached as Exhibit 2 is a true and correct copy of a September 24, 2007 shipping invoice for Solu-Medrol associated with Contract No. 40/2005/402, submitted by Pfizer Enterprises SARL to the Iraqi Ministry of Health.

7. Plaintiffs list "Wyeth Pharmaceuticals Inc./Pfizer Enterprises SARL" as the supplier on the alleged 2006 contract for Xyntha, but acknowledge that Pfizer Enterprises SARL did not become the supplier of Xyntha until 2010, after the dates of Plaintiffs' alleged injuries. AC ¶ 284 n.234.

* * *

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: Washington, DC
April 25, 2018

Christopher N. Manning, Esq.

# EXHIBIT 1

REPUBLIC OF IRAQ
MINISTRY OF HEALTH

THE STATE COMPANY
FOR MARKETING DRUGS AND
MEDICAL APPLIANCES
(KIMADIA)

No.
DATE:     ش.أ.م/1/14/

 

## Contract of Provision of Medicine
### Order No. 40/2011 /446

**Contracting Partys:**

The First Party (purchaser): State Company for Marketing Drugs and Medical Appliances represented by its Director General And Chairman of the Board of Directors in his Official capacity Bab Al-Moa'adham – Baghdad – Ministry of Health (Kimadia)

The Second Party (The Seller): Pfizer Enterprises s.a.r.l.C/O pfizer Service Co.B.V.B.A, Hoge wei,10,B-1930 zaventem,Belgium

According to the awarding letter no.4099in15-6-2011, the two aim parties agreed on the followings:

1. Quantity: As it is mentioned here below.
2. Origin of the Goods: Belgium
3. The Manufacturing Company: : Pfizer Manufacturing Belgium NV
4. Quality and Specifications: As it is mentioned here below
5. Packing: As it is mentioned here below.
6. Shipment: 3 lots with an interval of 3 months between each lot
7. Delivery: During the period of credit the first consignment during the period of (3-4 months) from the date of receiving the credit from the bank.
8. Method of transport: CIP Baghdad By air from Belgium to Queen Alia airport(Jordan) then by cooled trucks to Kimadia stores in Baghdad via Traibil or by air from Belgium to Baghdad airport directly then by cooled trucks to kimadia stores in Baghdad on condition that all charges incurred upon goods and custom clearing in the airport and its arrival to buyer stores at the account of the seller.
9. The Price: As it is mentioned here below
10. Total Amount: (114635.00)one hundred fourteen thousand six hundred thirty five American dollar only, CIP Baghdad.
11. The seller must provide the purchaser with (50 vial) from each Batch free of charge for the purposes of analysis.
12. Validity of Credit: ( 12 ) months from the date of receiving the credit from the bank.
13. The Name of the corresponding bank of the beneficiary Pfizer Enterprises s.a.r.l.C/O pfizer Service Co.B.V.B.A only
KBC bank formerly Kredietbank,Belgium
Head office ,Havenlaan,2B-1080 Brussels,Belgium
Account no. :USD Account#IBAN .:BE67482908523887
Swift:KREDBEBB

Account name: Pfizer
This account no is related to the beneficiary
(Pfizer Enterprises s.a.r.l.C/O pfizer Service Co.B.V.B.A)only

| National Code | Name of Material | Quantity | Packing | Unit Price US Dollar | Total Price in US Dollar |
|---|---|---|---|---|---|
| 15-AF0-018 | Solu Medrol 250 mg Methyl Prednisolon(As sodium Succinate)250 mg I.M,slow I.V.inj.,I.V infusion | 22927 pack | 1 Injection Vial of 250MG/4ML/pack | 5.00/ pack | 114635.00 |

Total Value. 114635.00$ CIP Baghdad in American Dollar

The First Party (Purchaser):
State Company for Marketing Drugs and Medical Appliances
Represented by its Director General And Chairman of the Board of Directors in his Official Capacity
Address: Bab Al-Moa'adham – Baghdad – Ministry of Health
(Kimadia)

The Second Party (seller):
Name of Company: Pfizer Enterprises s.a.r.l c/o pfizer Service Co.B.V.B.A
Address:,Hoge wei,10,B-1930 zaventen,Belgium
Name of Signing Person:
His Position and Proper Authorization:

PFIZER ENTERPRISES SARL (PEL)
c/o PFIZER SERVICE COMPANY BVBA
Hoge Wei 10
B-1930 ZAVENTEM

1 - 5

40/2011/446

**Obligations of the Second Party (seller):**

1. The provision of the first party with the medicine stated in the attached list in accordance with the international standard specifications and the announced conditions and agreed upon and with the quantity in accordance with the prices stated behind each article.
2. To deliver the materials in accordance with the delivery & shipment articles stated in the contract & on contrary of this a delay penalty is to be imposed against your firm according to the following equation :- [Amounting of the consignment (in American Dollar) / consignment period in days x 10% = amount of delay penalty / day] from the amount of the delayed quantity & this delay penalty will be imposed also on samples for analysis, which should not exceed the rate of (10%) from the value of the contract after that a legal action will be taken against your firm and kimadia reserve the right to confiscate the performance bond and the second party (seller) bears the difference raised from the execution of Kimadia for the contract and the L/C period is (12months).
3. If the delaying penalty rate exceeds (10%) from the value of the contract, the legal action will be taken against your firm and will bears the difference of the price raised from the execution of the contract by the first party.
4. To approach the goods to the stores of the first party transport it, insuring it (CIP) and not to be free from this obligation till organizing the formal unloading minutes in the place of handing over agreed upon.
5. Submitting the guarantee of good performance (performance bond) and with the rate of (5%) from the value of the contract valid for 12 months and extended automatically until completing his contracting obligations provided that this guarantee must be submitted after your notification with awarding letter and before signing the official contract from our side and it should be issued by reliable Iraqi bank.
6. The second party does not have the right to waive from the contract or transfer it to another person only with the approval of the first party.
7. The seller should stamp the phrase (Failed –not for human consumption, MOH-Kim) on the total failed in analysis or in comply with specification on seller account.
8. To compensate the defected materials failed in analysis, shortage materials, materials which not comply with agreed specifications & missing materials during the same delivery period stated in the contract and should be started from the date of notification and the other shipment should be dispatched within the same shipping schedule from the date of dispatching the compensation, on contrary ;Kimadia reserves the right to impose the same penalty stated in article no (2) and buy the item from another supplier on the seller account in addition to impose the administrative charges and price difference , confiscate all guarantees & submit the seller to specialized court to recover it's rights.
9. The second party removes any material which its defect is confirmed from the place of handing over and any damage which is caused from this and during the period of 45 days from the date of communication by the decision of refusing the materials and if he is late from removing it during the stated period, then he is to be considered as relinquishing from all his rights related with these materials.
10. The insurance should cover all risks.
11. The second party bears all banking charges inside and outside Iraq.
12. The seller has to submit a request to extend the L/C and shipment to kimadia within 15 days from the date of the reason that force him to extend with a full explanation for for each request if the reason is out of his control.

**Obligations of the First Party (Purchaser)**

1. Paying the values of the medicine agreed upon to provide in accordance to the payments conditions shown below:-
   (By irrevocable documentary letter of credit, 50% from the value of goods for each shipment will be paid upon presentation of shipping documents in compliance to L/C term; the remaining 50% will be effected by openers instruction after receipt and acceptance of goods.).
2. Receiving the goods agreed upon to provide when it is arrived to the stores of Kimadia and through legalized unloading in agreed receipt place.
3. The receipt of the materials is not considered as an acknowledgement of its conformity with the specifications and technical conditions and it depends on the results of the laboratory tests issued from the National Center for the Control and Medicinal Researches.
4. To provide the Second party with the official letters which have relation with the execution of the contract without the First Party to be responsible for the result of these correspondences.

The First Party (Purchaser):
State Company for Marketing Drugs and Medical Appliances
Represented by its Director General And Chairman of the Board of Directors in his f(?)icial Capacity
Address: Bab A Moa'adham – Baghdad – Ministry of Health
(Kimadia)

PFIZER ENTERPRISES SARL (PEL)
c/o PFIZER SERVICE COMPANY BVBA
Hoge Wei 10
The Second Party (seller):
Name of Company: Pfizer Enterprises s.a.r.l C/O pfizer Service Co.B.V.B.A
Address: Hoge wei,10,B-1930 Zaventem, Belgium
Name of Signing Person: 
His Position and Proper Authorization: Iraq Sales manager

2 - 5                                                                  40/2011/446

**General Provisions:**
1. When the Second Party disregards any contractual obligations imposed on him, the contract is considered as cancelled autonomously by itself without the need of issuing a judicial verdict and after warning the Second party to remove the diversity during the period of the warning for 45 days from the date of its issuance.
2. The Iraqi law is considered the law which should be applied when having dispute concerning the application of the provisions of this contract.
3. The Iraqi Courts are the specialized in solving the disputes arising from the application of the provisions of this contract.
4. The recovery of any right to occur to the First Party is carried out in accordance to the law of collecting the governmental debts No. 56 for the year 1977.
5. The preparation of the contract is done by the two languages the Arabic and English and the Arabic language is the one to rely upon when having a dispute between the two parties excluding some of the technical terms which its translation is impossible to the Arabic Language
6. The Contract is subject to the Iraqi laws including the laws related with the tax, stamp, legal duty and announcement fees.
7. The non performance of any change in the contract only with the approval of the two parties otherwise it will be considered as a breach for contracting obligations against 2nd party and kimadia reserve the right to take a legal procedure or to impose a penalty not less than 1% and not exceeding 5% of the shipped Qty. from arrived item which is un compliance to the contracting conditions.
8. The first party imposes on the second party administrative charges upon executing the obligations of the second party to another contracting company or person at ratio not exceeding 20% from actual cost for executing this commitment.
9. The Authorized scientific Bureau of representation companies should already charge upon judicial announcements.
10. Continuation the responsibility of scientific Bureau until ending of validity's Authorization from foreign companies unless the next Authorization may possibly remedy all the Liabilities of previous foreign company and its effects.

## The Weight, Quality and Suitability for Human Consumption

The seller must provide kimadia with a certificate issued by the health authorities or the health departments in the country of origin confirming in it that the goods are suitable for the human consumption and to be used domestically in the country of origin.

## Conditions of Transport

The seller must provide the purchaser with the details mentioned below and at the same time to inform Kimadia about the completion of the shipment:
1. The complete quantity loaded
2. The expected date of arrival and it should be given before at least one week.
3. The number of the trucks with the complete details of the cargo.
4. A manifest for each car (truck) and should be mentioned in it the order number- No. of letter of credit, serial number and it also consists that the goods are imported according to the payment condition mentioned above.
5. The truck should be clean covered and properly closed.

## Special Remarks

The supplier is bound with the conditions of the contract and submitting the shipping document at the arrival of the consignment and is responsible for any shortage appears or any delay to be resulted because of non availability of the shipping document are effected on the supplier.

The First Party (Purchaser):
State Company for Marketing Drugs and Medical Appliances
Represented by its Director General And Chairman of the Board of Directors in his Official Capacity
Address: Bab Al-Moa'adham – Baghdad – Ministry of Health
(Kimadia)

PFIZER ENTERPRISES SARL (PEL)
c/o PFIZER SERVICE COMPANY BVBA

Hoge Wei 10
B-1930 ZAVENTEM

The Second Party (seller):
Name of Company: Pfizer Enterprises s.a.r.l C/O pfizer Service Co.B.V.B.A
Address: Hoge wei,10,B-1930 zaventen,Belgium
Name of Signing Person:
His Position and Proper Authorization: Iraq Sales manager

3.-5                                                                                         40/2011/446

### Required Documents

1. To submit the commercial invoices of the seller in one original copy and six copies clarifying the loading to the port of destination
2. A complete set of the notification of consignment of the truck/ three original copies from the receipt of confirmation of the material C.M.R.
3. Certificate of Origin
4. Certificate of quality analysis and packing quality
5. Packing list
6. The presentation of the documents must be carried out to the purchaser immediately after loading the goods
7. To fix the order No. on all documents, invoices and correspondences related to the contract.
8. Airway bill / three original.

### Special Conditions of the Medicine

1. To submit the following certificates in case of its availability for the awarded materials: FDA, CE, HPB, and MOH,
2. The method and the legalized certificate of analysis with the international standard article for the purposes of analysis should be sent with the first consignment of the order, otherwise its acceptance shall not be done.
3. National code must be printed on the external box for whole quantity and also in the commercial invoice
4. The seller must write the name of the manufacturing Company and the country of origin on the inner and out side package and in the commercial invoice.
5. The seller is responsible to compensate the purchaser for any shortage or loss of material or the material which are not in conformity with the specifications agreed upon in the confirmation of the order and during the same period of the receipt of the contract, otherwise the seller must pay the penalty for the delay and with the same percentage accounted in the delay of shipping
6. All labels on each container must be written in English language.
7. To submit the legalized certificate stating that the material is free from Bovine transmissible spongiform encephalopathies (T.S.E.) for each consignment with the shipping documents for the material used or extracted from the animal origin (cattle).
8. The seller should not deliver material containing Amaranth dye.
9. Items should be from fresh manufactured batches, not more than ( 6 ) months old upon arrival to kimadia stores for item with 3 years shelf life or more and not more than ( 3 ) months old for items with 2 years shelf life or less .The shelf life of contracting item :(60 months).
10. The consignment must be marked with the order number and each consignment must contain a copy of the packing list and all commercial documents required, otherwise the order shall be neglected.
11. Packing must be performed in an excellent way and inside safety boxes to protect the material from damage, breakage and shortage by using a (Cellophane) ribbon for each pallet.
12. The packing material if it was from the planting origin and precisely wood, it should be free from the plant epidemic and insects.
13. Ministry of Health (MOH) / Iraq must be printed on each single pack and also on each single unit inside pack ( Vial) in addition to out side carton for the whole complete quantity of the material.
14. The seller must provide the purchaser with the international standard material but not the factory for example- standard materials prepared in accordance to the British pharmacopoeia or the American or the European.
15. Printing of the batch number – date of manufacturing and expiry – route of administration (for injection only) on the external and internal package for the material and in English Language and in the commercial invoice.
16. In case of the non- compliment of the supplier with the scheduling of shipment agreed upon, so Kimadia shall have the right for non compliment in any undertaking concerning this contract.
17. The shipping document must be sent to the import department directly and the other copy to be sent with the consignment.
18. The seller must register his Company and materials in the Iraqi Ministry of Health.
19. The shipment of the goods must be carried out with the least batch number.

PFIZER ENTERPRISES SARL (PEL)
c/o PFIZER SERVICE COMPANY BVBA

Hoge Wei 10
B-1930 ZAVENTEM

| The First Party (Purchaser): State Company for Marketing Drugs and Medical Appliances Represented by the Director General And Chairman of the Board of Directors in his Official Capacity. Address: Bab -Moa'adham – Baghdad – Ministry of Health (Kimadia) | The Second Party (seller): Name of Company: Pfizer Enterprises s.a.r.l C/O pfizer Service Co.B.V.B.A Address:,Hoge wei,10,B-1930 zaventem,Belgium, Name of Signing Person: His Position and Proper Authorization: Iraq Sales manager |

4 - 5

40/2011/446

20. The seller must arrange the packing in pallets and cartons tied up and pressed tightly and place the stickers containing the information in a clear way on the carton and according to the International Organization Specifications in order to unify the measurements.
The pallet must be with the following dimensions in order to facilitate the receipt of the goods by the purchaser
Length: 1200 mm
Width: 1000 mm.
Height: 1000 mm (Including the height of the base of the pallet).
The weight of each pallet must not be more than 800 Kg.
21. Goods which not sold in buyer stores after the date of expiration are subject to be compensated 100%.
22. The seller has to compensate the failed item in analysis and goods which not sold in buyer stores after the date of expiration if the reason of expiration is technical because of the supplier the compensation must be 100% with 15% administrative charges from the total value of failed item and expired item will be added and a delay penalty in case the company not dispatch the compensation with agreed period in the contract and with the agreed percentage.
23. All banking charges which are arranged on the opening of the credit, amendment, extension and commissions outside and inside Iraq shall be on the account of the seller.
24. The certificate of the origin of the goods states that the goods are produced in a comprehensive way in the country of origin of the manufacturing Company and to be presented with the shipping document.
25. The materials which need a cool environment must be shipped in a cooled trucks and the seller shall be responsible for the compensation of any material which fails in the analysis because of the unsuitable temperature degree during the transport.
26. The seller is responsible for the conformity of the material with the specifications.
27. It is to be requested from the supplier to take the special care in packing the bags for the consignments in order to expedite the unloading work.
28. kindly requested to submit the original commercial invoice to import department before shipping the consignment (for each shipment), otherwise a penalty will be imposed against your firm
29. In case the item failed in analysis or has been expired & the company not responds for compensation within 45 days after sending warning letter including the compensation & with draw the failed or expired item, kimadia has the right to destroy the failed or expired item &dropping the right of the company for getting back the item or its value.
30. The seller certifies that all raw materials, instruments to be supplied, will be of (Belgium) origin.

The First Party (Purchaser):
State Company for ...eting Drugs and Medical Appliances
Represented by its D... tor General And Chairman of the Board of Directors in his Official C. ...acity
Address: Bab Al-Moa'adh...   Baghdad – Ministry of Health
(Kimadia)

The Second Party (seller):
Name of Company: Pfizer Enterprises s.a.r.l C/O pfizer Service Co.B.V.B.A
Address: Hoge wei,10,B-1930 zaventen,Belgium
Name of Signing Person: Zaid Madanat
His Position and Proper Authorization: Iraq Sales manager

PFIZER ENTERPRISES SARL (PEL)
c/o PFIZER SERVICE COMPANY
Hoge Wei 10
B-1930 ZAVENTEM

5 - 5

40/2011/446

# EXHIBIT 2

Pfizer Enterprises SARL
Rond-Point du Kirschberg
51, Avenue J.F. Kennedy
L-1855 Luxembourg
G.D. de Luxembourg
BE 454950685



FISCAL REPRESENTATION BY:
Pfizer Manufacturing Belgium NV
Rijksweg 12
2870 Puurs
Belgium
Belgian VAT: BE454.950.685

| Order Date | Your reference |
|---|---|
| 9/09/05 | 40/2005/402 SOLU-MEDROL |

| Our Reference | Order N°. | Customer N°. |
|---|---|---|
| | PB S  32714 | 444  Z01 |

| Invoice Date | Invoice N°. | Page |
|---|---|---|
| 24/09/07 | PB00052331 | 1 |

| INVOICE | IN |
|---|---|

Ship To:
MINISTRY OF HEALTH
BAB AL MUADAUM
POB6138BAGHDAD
IRAK
STATE COMPANY FOR MARKETING DRUGS
AND MEDICAL APPLIANCES

Marks:
FOR: MINISTRY OF HEALTH
     BAB AL-MUA'ADAM -P.O. BOX 6138
     BAGHDAD - IRAQ
ORDER NR: 40/2005/402
L/C NR: DTNLEM500395
L/C NR: TBI/4769/2007 -ILCUS0175807

Sold To:
MINISTRY OF HEALTH,STATE CO.
FOR MARKETING DRUGS+MEDICAL
APPLIANCES,BAB AL MUADAUM,
P.O.BOX 6138 BAGHDAD
IRAQ

Ship From    ZAVENTEM(BRUSSELS)-BELGIUM
Transport    AIR TRANSPORT
Import Licence
Terms of sale   CIP   DABBASH BAGHDAD

Terms of Payments   IRR.L/C-80%PAYABLE AGAINST PRESENTATION-20%WITHIN 180 DAYS DATE OF SHIP DOC
REFERENCE DTNLEM500395 DATE 05/06/2007
Destination   IRAK

| Item | Product Description | Sales Unit | Unit Price | Quantity | Amount |
|---|---|---|---|---|---|
| 001 | SOLU-MEDROL AOV125MG2ML(B)EX/T | PACK | 7,830 | 10000,000 | 78.300,00 USD |

    CODE   1006202 LOCAL CODE    022357    CUST.TRF. 3004321000
    LOT    NJ0969          QTY        1.450,000 PACK
      CLEARED CUSTOMS DOC.NR. :    NONE           CUSTOMS STATUS FREE
      MFD 2006/09 EXP. 2011/08 P.O. PB 025251 003
      ORIGIN       412   B   BELGIQUE/BELGIE/BELGIUM
      PROVENANCE   412   B   BELGIQUE/BELGIE/BELGIUM
    LOT    P05961          QTY        8.550,000 PACK
      CLEARED CUSTOMS DOC.NR. :    NONE           CUSTOMS STATUS FREE
      MFD 2007/05 EXP. 2012/04 P.O. PB 030026 001
      ORIGIN       412   B   BELGIQUE/BELGIE/BELGIUM
      PROVENANCE   412   B   BELGIQUE/BELGIE/BELGIUM

| 002 | SOLU-MEDROL AOV125MG2ML(B)EX/T | PACK | 7,830 | 100,000 | 783,00 USD |

                              FOR CUSTOMS ONLY
                              samples for analysis
    CODE   1006202 LOCAL CODE    022357    CUST.TRF. 3004321000
    LOT    NJ0969          QTY          50,000 PACK
      CLEARED CUSTOMS DOC.NR. :    NONE           CUSTOMS STATUS FREE
      MFD 2006/09 EXP. 2011/08 P.O. PB 025251 003
      ORIGIN       412   B   BELGIQUE/BELGIE/BELGIUM
      PROVENANCE   412   B   BELGIQUE/BELGIE/BELGIUM
    LOT    P05961          QTY          50,000 PACK
      CLEARED CUSTOMS DOC.NR. :    NONE           CUSTOMS STATUS FREE
      MFD 2007/05 EXP. 2012/04 P.O. PB 030026 001
      ORIGIN       412   B   BELGIQUE/BELGIE/BELGIUM
      PROVENANCE   412   B   BELGIQUE/BELGIE/BELGIUM

                              SUBTOTAL:    USD        78.300,00

                         AMOUNT TO BE PAID    USD    78.300,00

! FOR EACH PAYMENT PLEASE ADD THE PAYMENT REFERENCE    205   /00052331 !

| | | |
|---|---|---|
| Pfizer Enterprises SARL<br>Rond-Point du Kirschberg<br>51, Avenue J.F. Kennedy<br>L-1855 Luxembourg<br>G.D. de Luxembourg<br>BE 454950685 | <br>FISCAL REPRESENTATION BY:<br>Pfizer Manufacturing Belgium NV<br>Rijksweg 12<br>2870 Puurs<br>Belgium<br>Belgian VAT: BE454.950.685 | Order Date: 9/09/05   Your reference: 40/2005/402 SOLU-MEDROL<br>Our Reference   Order N°. PB S 32714   Customer N°. 444 Z01<br>Invoice Date 24/09/07   Invoice N°. PB00052331   Page 2<br>INVOICE   IN |

```
Ship To:
MINISTRY OF HEALTH
BAB AL MUADAUM
POB6138BAGHDAD
IRAK
STATE COMPANY FOR MARKETING DRUGS
AND MEDICAL APPLIANCES

Sold To:
MINISTRY OF HEALTH,STATE CO.
FOR MARKETING DRUGS+MEDICAL
APPLIANCES,BAB AL MUADAUM,
P.O.BOX 6138 BAGHDAD
IRAQ

Marks:
FOR: MINISTRY OF HEALTH
     BAB AL-MUA'ADAM -P.O. BOX 6138
     BAGHDAD - IRAQ
     ORDER NR: 40/2005/402
     L/C NR: DTNLEM500395
     L/C NR: TBI/4769/2007 -ILCUS0175807

Ship From        ZAVENTEM(BRUSSELS)-BELGIUM
Transport        AIR TRANSPORT
Import Licence
Terms of sale          CIP   DABBASAGHDAD

Terms of Payments    IRR.L/C-80%PAYABLE AGAINST PRESENTATION-20%WITHIN 180 DAYS DATF SHIP DOC
                     REFERENCE DTNLEM500395 DATE 05/06/2007
Destination   IRAK
```

| Item | Product Description | Sales Unit | Unit Price | Quantity | Amount |
|---|---|---|---|---|---|
|  |  | TOTAL VALUE FOR CUSTOMS |  | USD | 79.083,00 |

```
Vrij van BTW - export - art. 39
Exemption de TVA - export - art. 39
Exemption of VAT - export - art. 39
THE TOTAL INVOICE VALUE READS CIP AL-DABBASH, BAGHDAD
IN USD.
******
CONTRACT NR: 40/2005/402 -SOLU-MEDROL AOV 125MG 2ML
******
MANUFACTURER: PFIZER MANUFACTURING BELGIUM - PUURS
COUNTRY OF ORIGIN : BELGIUM
COUNTRY OF SHIPMENT : BELGIUM
******
COVERING SHIPMENT OF: MEDICAL DRUGS AS PER PURCHASE ORDER NO
40/2005/402. THE SELLER HAS TO SUPPLY THE BUYER WITH
(50 VIAL) FROM EACH BATCH AS FREE OF CHARGE FOR ANALYSIS
PURPOSE.
ORIGIN OF GOODS: BELGIAN
INCOTERMS: CIP APPLICANTS WAREHOUSES DABBASH BAGHDAD
******
TBI REFERENCE NUMBER: TBI/4769/2007 AND ILCUS0175807
L/C NR: DTNLEM500395
******
PAYMENT TERMS: 80PCT OF THE VALUE OF EACH SHIPMENT
IS PAYABLE AGAINST PRESENTATION OF SHIPPING DOCUMENTS
IN COMPLIANCE TO L/C'S TERMS.
THE REMAINING 20PCT FROM THE VALUE OF EACH SHIPMENT WILL
BE EFFECTED BY OPENERS INSTRUCTIONS WITHIN (180) DAYS FROM
DATE OF SHIPPING DOCUMENTS REPORTED BY TBI BUT WILL IN ANY
EVENT BE SETTLED AFTER A MAXIMUM OF 180 DAYS AFTER SHIPPING
DOCUMENTS DATE
******
ROUTING : AIR THEN BY COOL TRUCK TO CIP BAGHDAD OPENERS
WAREHOUSE VIA TRABEL
******
WE HEREBY CERTIFY THAT THIS INVOICE IS TRUE AND CORRECT.
```



| | | |
|---|---|---|
| Order Date | | Your reference |
| 9/09/05 | 40/2005/402 | SOLU-MEDROL |
| Our Reference | Order N°. | Customer N°. |
| | PB  S   32714 | 444    Z01 |
| Invoice Date | Invoice N°. | Page |
| 24/09/07 | PB00052331 | 3 |
| INVOICE | | IN |

Pfizer Enterprises SARL
Rond-Point du Kirschberg
51, Avenue J.F. Kennedy
L-1855 Luxembourg
G.D. de Luxembourg
BE 454950685

FISCAL REPRESENTATION BY:
Pfizer Manufacturing Belgium NV
Rijksweg 12
2870 Puurs
Belgium
Belgian VAT: BE454.950.685

Ship To:
MINISTRY OF HEALTH
BAB AL MUADAUM
POB6138BAGHDAD
IRAK
STATE COMPANY FOR MARKETING DRUGS
AND MEDICAL APPLIANCES

Sold To:
MINISTRY OF HEALTH,STATE CO.
FOR MARKETING DRUGS+MEDICAL
APPLIANCES,BAB AL MUADAUM,
P.O.BOX 6138 BAGHDAD
IRAQ

Marks:
FOR: MINISTRY OF HEALTH
     BAB AL-MUA'ADAM -P.O. BOX 6138
     BAGHDAD - IRAQ
ORDER NR: 40/2005/402
L/C NR: DTNLEM500395
L/C NR: TBI/4769/2007 -ILCUS0175807

Ship From        ZAVENTEM(BRUSSELS)-BELGIUM
Transport        AIR TRANSPORT
Import Licence
Terms of sale         CIP    DABBASAGHDAD

Terms of Payments   IRR.L/C-80%PAYABLE AGAINST PRESENTATION-20%WITHIN 180 DAYS DATF SHIP DOC
                    REFERENCE DTNLEM500395 DATE 05/06/2007
Destination   IRAK

| Item | Product Description | Sales Unit | Unit Price | Quantity | Amount |
|---|---|---|---|---|---|

BANK: KREDIETBANK CORPORATE - ACCOUNT 482-9085238-87
IBAN : BE67 4829 0852 3887     BIC/SWIFT: KREDBEBB

