# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSHUA ATCHLEY *et al.*, | |
| Plaintiffs, | Case No. 17-cv-02136-RJL |
| v. | |
| ASTRAZENECA UK LIMITED *et al.*, | JURY TRIAL DEMANDED |
| Defendants. | |

### PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY REGARDING THE ANTI-TERRORISM CLARIFICATION ACT

Plaintiffs hereby notify the Court of the recent enactment of the Anti-Terrorism Clarification Act of 2018 ("Clarification Act"), which (among other things) amends the Anti-Terrorism Act's ("ATA") act-of-war defense. *See* Pub. L. No. 115-253, 132 Stat. 3183 (Oct. 3, 2018). Under the ATA, a plaintiff cannot recover for injuries caused by "an act of war," 18 U.S.C. § 2336(a), which includes acts "occurring in the course of . . . armed conflict between military forces of any origin," 18 U.S.C. § 2331(4)(C). The Clarification Act retroactively[1] clarifies that a "military force" under that provision cannot include any designated FTO, any Specially Designated Global Terrorist ("SDGT"), or any other group "determined by the court to not be a 'military force.'" Clarification Act § 2(a) (codified at 18 U.S.C. § 2331(6)).

Plaintiffs have previously shown that Defendants' act-of-war defense here lacks merit. *See* ECF No. 76 ("MTD Opp'n") at 33-41. The Clarification Act provides further support for that conclusion. Most significantly, it directly repudiates *Kaplan v. Central Bank of the Islamic*

---

[1] This provision of the Clarification Act applies to any civil action pending on the date of its enactment, including this case. *See* Clarification Act § 2(b).

*Republic of Iran*, 961 F. Supp. 2d 185 (D.D.C. 2013), which is the single, foundational case on which Defendants' act-of-war argument rests. Although the D.C. Circuit has vacated that ruling, *see* ECF No. 80, Defendants nonetheless have cited it 13 separate times for its supposed "persuasive value." ECF No. 84 at 17; *see* ECF No. 72-01 at 42, 45, 47-48; ECF No. 84 at 13 n.10, 16-18. They relied on *Kaplan* because they had to: it is the *only* decision Defendants could find dismissing an ATA claim under the "military force" prong of the act-of-war defense.[2]

The Clarification Act establishes that Defendants' reliance on *Kaplan* is misplaced. *Kaplan*'s flawed (but factually distinguishable) interpretation of the act-of-war exception led the court to conclude that Hezbollah – a designated FTO since 1997 – acted as a "military force" during the Israel-Lebanon War. *See* MTD Opp'n at 34 n.36, 37-38. Congress now has rejected that conclusion and made clear that FTOs like Hezbollah can never be a "military force." 18 U.S.C. § 2331(6)(A)(i). Indeed, Congress took aim directly at *Kaplan* and identified that decision by name as the impetus for the Clarification Act. *See* H.R. Rep. No. 115-858, at 4 (2018) (citing *Kaplan* as incorrectly concluding that "rocket attacks carried out by Hezbollah . . . were acts of war").[3] In abrogating *Kaplan*'s erroneous holding, the Clarification Act restored "Congress' original intent with regard to the act of war exception." *Id*. at 5. It also now has left Defendants without a single precedent supporting their view of the ATA's act-of-war exception.

---

[2] *Stutts v. De Dietrich Grp.*, 2006 WL 1867060 (E.D.N.Y. June 30, 2006) (cited by ECF No. 84 at 12-13), applied a different, irrelevant-here prong of the act-of-war defense. *See id*. at *4 (applying "declared war" prong of defense to claims concerning "1991 Persian Gulf War").

[3] Parallel bills H.R. 5954, 115th Cong. (2d Sess. 2018) and S. 2946, 115th Cong. (2d Sess. 2018) called for identical revisions to 18 U.S.C. § 2331. The latter became law, but only the House issued a committee report. In the Senate, the bill's lead sponsor likewise invoked *Kaplan* (though not by name) as the motivation for the amendment. *See* 164 Cong. Rec. S5103 (daily ed. July 19, 2018) (statement of Sen. Grassley) ("Some [FTOs], however, have twisted the exception to get away scot-free. The 'act of war' exception should not be a liability shield for designated terrorist organizations or their supporters.").

Defendants here make the same analytical errors that precipitated the Clarification Act. Defendants assert that Jaysh al-Mahdi was a "military force" because it had an organized structure, attacked military (and many civilian) targets, used military-style weapons and tactics, and called itself an "army." *See* ECF No. 72-1 at 42-43; ECF No. 84 at 17. But most FTOs (including Hezbollah) share virtually all of those same attributes, *see* MTD Opp'n at 38-39,[4] and Congress has made clear they are *not* "military forces."[5] Defendants cannot transform Jaysh al-Mahdi into a "military force" based on criteria that apply to virtually every FTO in existence.

Of course, Jaysh al-Mahdi is not itself a designated FTO. But the Clarification Act likewise disposes of any suggestion that Jaysh al-Mahdi's non-FTO status somehow makes it a

---

[4] *See* AC ¶¶ 357-62 (describing Hezbollah); *see also*, *e.g.*, U.S. State Dep't, *2007 Country Reports on Terrorism* (Apr. 2008) (Pl. Ex. 9, ECF No. 76-9) at 112 (noting Israeli Air Force strikes against Hamas's "military headquarters"), 113 (referring to Hamas's "military-wing" members), 192 (referencing the al-Qaeda "military committee" and noting "military training in al-Qa'ida's camps"), 270 (Al-Aqsa Martyrs Brigade, an FTO, "attack[ed] Israeli military targets and settlers with the aim of driving Israel from the West Bank"), 275-276 (CPP/NPA, an FTO, is the "military wing of the Communist Party of the Philippines" and wages "protracted guerrilla warfare," including against "U.S. military interests"), 278-279 (Hamas engaged in a "military-style coup" and "expanded its military capabilities"), 284 (Jemaah Islamiya, an FTO, has "military commander[s]"), 290 (Tamil Tigers, an FTO, pursues a "battlefield insurgent strategy" through an "amphibious force, the Sea Tigers" and an "air wing, the Air Tigers," has engaged in "cease-fire[s]," and deploys "armed combatants"), 292-293 (MEK, an FTO as of 2007, exhibited "paramilitary skills," targeted "U.S. military personnel and U.S. civilians working on defense projects," used "military equipment," and deployed "thousands of MEK fighters in suicidal, mass wave attacks against Iranian forces"), 297 (PFLP-GC, an FTO, maintains "military bases in Lebanon"), 304 (the Colombian FARC, an FTO, employs "military commanders" and engages in "conventional military action"), 306 (DHKP/C, an FTO, "target[s] primarily current and retired Turkish security and military officials"), 308 (the AUC, an FTO as of 2007, was originally founded with a "centralized military structure" and performs "[p]aramilitary operations").

[5] To the extent Defendants' inaccurate, extra-pleading characterization (ECF No. 84 at 17) of Jaysh al-Mahdi "cease-fires" is properly before the Court, *but see* ECF No. 80 at 1-2 (act-of-war defense is not jurisdictional), FTOs also commonly enter into cease-fires. *See 2007 Country Reports on Terrorism* at 110 (Hamas "cease-fire"), 132 (Tamil Tigers "Ceasefire Agreement"), 270 (Al-Aqsa Martyrs Brigade "ceasefire agreement"), 274 (Basque Fatherland and Liberty "'permanent' cease-fire"), 277 (Gama'a al-Islamiyya "cease-fire"), 287 (Kongra-Gel "self-imposed cease-fire"), 293 (MEK "cease-fire with Coalition Forces").

"military force." See 18 U.S.C. § 2331(6)(B) (act-of-war exception does not protect non-FTO groups "determined by the court to not be a 'military force'"). As the House Judiciary Committee explained, the Clarification Act "make[s] clear a person in addition to an FTO or an SDGT may be found not to be a military force." H.R. Rep. No. 115-858, at 4 n.11. Because Jaysh al-Mahdi operated like most FTOs do – even though it was never formally designated as one – it falls comfortably outside of the act-of-war exception. See MTD Opp'n at 33-39 (explaining why Jaysh al-Mahdi was not a "military force" under pre-Clarification Act case law, in large part because it made no effort to abide by the laws of war); AC ¶¶ 347-55.[6]

  Finally, the Clarification Act also confirms that Jaysh al-Mahdi was not a "military force" in part because it "worked closely with Hezbollah, a designated FTO that has orchestrated terrorist attacks against Americans around the globe." MTD Opp'n at 34. The Clarification Act now has eliminated any doubt that Hezbollah itself is a terrorist group, rather than a "military force," under the ATA. Jaysh al-Mahdi, in turn, was modeled on Hezbollah, worked closely with Hezbollah's leadership, and functioned as the "Iraqi branch of Hezbollah." AC ¶ 364; see id. ¶¶ 59, 365-407. If attacks against American troops committed by Hezbollah itself are categorically not attacks by a "military force," 18 U.S.C. § 2331(6)(A)(i), it makes no sense to come to the opposite conclusion when the same attacks are committed by a Hezbollah-sponsored proxy group that relies on Hezbollah training, weapons, and tactics.

  The Clarification Act (Ex. A), and the House Judiciary Committee Report accompanying it (Ex. B), are attached here for the Court's convenience.

---

[6] Moreover, the Clarification Act reaffirmed "Congress' original intent" that the act-of-war exception is focused on "'military action by recognized governments as opposed to terrorists.'" H.R. Rep. No. 115-858, at 5 (quoting H.R Rep. No. 102-1040, at 7 (1992)). That is fatal to Defendants' argument for the reasons previously explained. See MTD Opp'n at 36-38.

Dated:  October 23, 2018

                                          Respectfully submitted,

| | |
|---|---|
| Ryan R. Sparacino (D.C. Bar No. 493700)<br>Sparacino PLLC<br>1920 L Street, NW, Suite 535<br>Washington, D.C. 20036<br>Tel:  (202) 629-3530<br>ryan.sparacino@sparacinopllc.com | */s/ David C. Frederick*<br>David C. Frederick (D.C. Bar No. 431864)<br>Joshua D. Branson (D.C. Bar No. 981623)<br>Andrew E. Goldsmith (D.C. Bar No. 1007074)<br>Thomas G. Schultz (D.C. Bar No. 1028017)<br>Kellogg, Hansen, Todd,<br>  Figel & Frederick, P.L.L.C.<br>1615 M Street, N.W., Suite 400<br>Washington, D.C. 20036<br>Tel:  (202) 326-7900<br>Fax:  (202) 326-7999<br>dfrederick@kellogghansen.com<br>jbranson@kellogghansen.com<br>agoldsmith@kellogghansen.com<br>tschultz@kellogghansen.com<br><br>*Counsel for Plaintiffs* |