**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOSHUA ATCHLEY *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:17-CV-02136 (RJL) |
| v. | ) | |
| | ) | |
| ASTRAZENECA UK LIMITED *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM IN SUPPORT OF FOREIGN DEFENDANTS'**</u>
<u>**MOTION TO DISMISS ALL CLAIMS AND DOMESTIC DEFENDANTS'**</u>
<u>**MOTION TO DISMISS THE STATE-LAW CLAIMS FOR LACK OF PERSONAL**</u>
<u>**JURISDICTION**</u>

# TABLE OF CONTENTS

———————————

P<small>AGE</small>

TABLE OF AUTHORITIES .................................................................... ii

PRELIMINARY STATEMENT .............................................................. 1

BACKGROUND ................................................................................... 4

ARGUMENT ......................................................................................... 7

I.      LEGAL STANDARDS ................................................................. 7

II.    ASSERTING PERSONAL JURISDICTION OVER THE FOREIGN
DEFENDANTS WITH RESPECT TO PLAINTIFFS' ATA CLAIMS
WOULD VIOLATE DUE PROCESS .......................................... 9

       A.    Plaintiffs Cannot Establish General Jurisdiction Over Any Of The
Foreign Defendants Because None Of Them Is "At Home" In The
United States ........................................................................ 9

       B.    Plaintiffs Have Not Pleaded Specific Jurisdiction Over Any Of The
Foreign Defendants Because None Of The Alleged Suit-Related
Conduct Occurred In Or Was Purposefully Directed At The United
States .................................................................................... 10

              1.    The Foreign Defendants' Alleged Suit-Related Conduct
Occurred Abroad and Was Not Purposefully Directed at the
United States ................................................................. 11

              2.    Plaintiffs' Allegations of Limited U.S. Contacts Are Not
Relevant "Suit-Related Conduct" ................................. 15

              3.    Plaintiffs Improperly Conflate Separate Corporate Affiliates ....... 20

              4.    The Foreign Defendants' Alleged U.S. Contacts Did Not Cause
Plaintiffs' Injuries ......................................................... 22

III.   PLAINTIFFS HAVE NOT PLEADED PERSONAL JURISDICTION OVER
THEIR STATE-LAW CLAIMS AGAINST ALL DEFENDANTS .................... 25

CONCLUSION.................................................................................... 25

i

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*Acosta Orellana v. CropLife Int'l,*
   711 F. Supp. 2d 81 (D.D.C. 2010) ................................................................22

*Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.,*
   751 F.3d 796 (7th Cir. 2014) .......................................................................10

*Alkanani v. Aegis Def. Servs., LLC,*
   976 F. Supp. 2d 13 (D.D.C. 2014) ................................................................8

*Asahi Metal Indus. v. Superior Court,*
   480 U.S. 102 (1987) ......................................................................................8

*Axiom Foods, Inc. v. Acerchem Int'l Inc.,*
   874 F.3d 1064 (9th Cir. 2017) .....................................................................10

*Ballard v. Savage,*
   65 F.3d 1495 (9th Cir. 1995) .......................................................................23

*Beydoun v. Wataniya Rests. Holding, Q.S.C.,*
   768 F.3d 499 (6th Cir. 2014) .................................................................22, 23

*\*Bristol-Myers Squibb Co. v. Superior Court,*
   137 S. Ct. 1773 (2017)....................................................................10, 18, 19, 24

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462 (1985)...........................................................................10, 15, 22

*Burnett v. Al Baraka Inv. & Dev. Corp.,*
   292 F. Supp. 2d 9 (D.D.C. 2003) ................................................................14

*Calder v. Jones,*
   465 U.S. 783 (1984)....................................................................................13

*Canuto v. Mattis,*
   273 F. Supp. 3d 127 (D.D.C. 2017) ..............................................................8

*Clay v. Blue Hackle N. Am., LLC,*
   907 F. Supp. 2d 85 (D.D.C. 2012) ..............................................................20

*CNE Direct, Inc. v. Blackberry Corp.*,
  821 F.3d 146 (1st Cir. 2016) ................................................................22

*Crane v. N.Y. Zoological Soc'y*,
  894 F.2d 454 (D.C. Cir. 1990) ...............................................................8

*\*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) .................................................................2, 9, 10

*\*Estate of Klieman v. Palestinian Auth.*,
  82 F. Supp. 3d 237 (D.D.C. 2015) .................................................12, 13, 22

*Foster v. Arletty 3 SARL*,
  278 F.3d 409 (4th Cir. 2002) ...............................................................17

*GCIU-Employer Ret. Fund v. Goldfarb Corp.*,
  565 F.3d 1018 (7th Cir. 2009) .............................................................22

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011) .......................................................................9

*Harlow v. Children's Hosp.*,
  432 F.3d 50 (1st Cir. 2005) ...............................................................23

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ......................................................................22

*Helmer v. Doletskaya*,
  393 F.3d 201 (D.C. Cir. 2004) ..............................................................7

*Hourani v. PsyberSolutions LLC*,
  164 F. Supp. 3d 128 (D.D.C. 2016) ........................................................21

*Hull v. Eaton Corp.*,
  825 F.2d 448 (D.C. Cir. 1987) ............................................................21

*Kaupthing ehf. v. Bricklayers & Trowel Trades Int'l Pension Fund Liquidation Portfolio*,
  291 F. Supp. 3d 21 (D.D.C. 2017) ..........................................................8

*Labadie Coal Co. v. Black*,
  672 F.2d 92 (D.C. Cir. 1982) .............................................................20

*Licci v. Lebanese Canadian Bank*,
  732 F.3d 161 (2d Cir. 2013) ..............................................................16

*Livnat v. Palestinian Auth.*,
  851 F.3d 45 (D.C. Cir. 2017) ............................................................................ *passim*

*Lurensky v. Wellinghoff*,
  167 F. Supp. 3d 1 (D.D.C. 2016) .................................................................................5

*Mazza v. Verizon Wash. DC, Inc.*,
  852 F. Supp. 2d 28 (D.D.C. 2012) .............................................................................20

*Monge v. RG Petro-Mach. (Grp.) Co.*,
  701 F.3d 598 (10th Cir. 2012) ............................................................................17, 19

*Nuevos Destinos LLC v. Peck*,
  No. 15-cv-1846 (EGS), 2019 WL 78780 (D.D.C. Jan. 2, 2019) ................................12

*Oceanic Exploration Co. v. ConocoPhillips, Inc.*,
  No. 04-332 (EGS), 2006 WL 2711527 (D.D.C. Sept. 21, 2006)................................20

*O'Connor v. Sandy Lane Hotel Co.*,
  496 F.3d 312 (3d Cir. 2007)........................................................................................23

*Platten v. HG Bermuda Exempted Ltd.*,
  437 F.3d 118 (1st Cir. 2006)........................................................................................23

*Rivera v. Rosenberg & Assocs., LLC*,
  142 F. Supp. 3d 149 (D.D.C. 2015) .............................................................................7

*Rush v. Savchuk*,
  444 U.S. 320 (1980)......................................................................................................8

*Safra v. Palestinian Auth.*,
  82 F. Supp. 3d 37 (D.D.C. 2015) ...............................................................................13

*Samantar v. Yousuf*,
  560 U.S. 305 (2010) ...................................................................................................13

*Siegel v. HSBC Holdings, PLC*,
  No. 17-cv-6593, 2018 WL 501610 (S.D.N.Y. Jan. 19, 2018) ..........................8, 19, 23

*Strauss v. Crédit Lyonnais, S.A.*,
  175 F. Supp. 3d 3 (E.D.N.Y. 2016) ............................................................................17

*In re Terrorist Attacks on September 11, 2001*,
  714 F.3d 659 (2d Cir. 2013)........................................................................................13

*In re Terrorist Attacks on September 11, 2001,
   538 F.3d 71 (2d Cir. 2008).................................................................................13, 14

In re Terrorist Attacks on September 11, 2001,
   295 F. Supp. 3d 416 (S.D.N.Y. 2018).........................................................................14

TransAmerica Leasing, Inc. v. La Republica de Venezuela,
   200 F.3d 843 (D.C. Cir. 2000).................................................................................21

Triple Up Ltd. v. Youku Tudou Inc.,
   235 F. Supp. 3d 15 (D.D.C. 2017)....................................................................18, 22

Upshaw v. Progressive Ins. Co.,
   292 F. Supp. 3d 205 (D.D.C. 2017).........................................................................25

*Walden v. Fiore,
   571 U.S. 277 (2014)................................................................................... passim

*Waldman v. PLO,
   835 F.3d 317 (2d Cir. 2016).............................................................11, 13, 16, 18

Williams v. Yamaha Motor Co.,
   851 F.3d 1015 (9th Cir. 2017) .................................................................................22

## Constitution

*U.S. Const. amend. V............................................................................................2, 8

*U.S. Const. amend. XIV ........................................................................................2, 8

## Statutes & Rules

18 U.S.C. § 2331 et seq............................................................................................1

18 U.S.C. § 2334(a) ................................................................................................25

Fed. R. Civ. P. 4(d) ..................................................................................................8

Fed. R. Civ. P. 4(d)(5)...............................................................................................8

Fed. R. Civ. P. 4(f)(3)................................................................................................8

Fed. R. Civ. P. 4(k)(1)(C) ........................................................................................25

Fed. R. Civ. P. 4(k)(2)...................................................................................................25

Fed. R. Civ. P. 12(b)(1)..............................................................................................1, 23

*Fed. R. Civ. P. 12(b)(2)............................................................................................1, 25

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 23

Defendants submit this memorandum in support of their motions to dismiss the Second Amended Complaint ("SAC")[1] pursuant to Federal Rule of Civil Procedure 12(b)(2).  Defendants AstraZeneca UK Limited, GE Medical Systems Information Technologies GmbH, Cilag GmbH International, Janssen Pharmaceutica NV, Pfizer Enterprises SARL, and F. Hoffmann-La Roche Ltd (collectively, the "Foreign Defendants") respectfully request that the Court dismiss all of Plaintiffs' claims—under both the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2331 *et seq.*, and state law—for lack of personal jurisdiction.

Defendants AstraZeneca Pharmaceuticals LP, GE Healthcare USA Holding LLC, GE Medical Systems Information Technologies, Inc., Johnson & Johnson, Ethicon Endo-Surgery, LLC, Ethicon, Inc., Janssen Ortho LLC, Johnson & Johnson (Middle East) Inc., Ortho Biologics LLC, Pfizer Inc., Pfizer Pharmaceuticals LLC, Pharmacia & Upjohn Company LLC, Wyeth Pharmaceuticals Inc., Genentech, Inc., and Hoffmann-La Roche Inc. (collectively, the "Domestic Defendants") respectfully join in the request to dismiss Plaintiffs' state-law claims.

## PRELIMINARY STATEMENT

Plaintiffs' SAC includes claims against Foreign Defendant companies for transactions with a foreign government ministry, the indirect proceeds of which Plaintiffs allege were ultimately used to fund attacks by a foreign militia in a foreign country.  Such claims are not appropriately heard in a U.S. court and should be dismissed as to the Foreign Defendants, both for the reasons raised in the accompanying Rule 12(b)(1) and 12(b)(6) motion to dismiss and for lack of personal jurisdiction pursuant to Rule 12(b)(2).  Plaintiffs' SAC does not cure the jurisdictional deficiencies identified by Defendants in their motions to dismiss Plaintiffs' initial and first amended complaints.

---

[1] Dkt. 106.  All docket references are to this action unless otherwise specified.

Plaintiffs' claims are based on allegations that the Foreign Defendants supplied medicines and medical equipment to the Iraqi Ministry of Health (the "Ministry") and Kimadia (the Ministry's state-owned import subsidiary) in Iraq.  Plaintiffs allege that these products were smuggled out of the Ministry and sold on the black market in the Middle East, and that an armed militia of Iraqi insurgents, Jaysh al-Mahdi ("JAM"), used some of the proceeds to procure weapons and hire recruits to carry out attacks in Iraq.[2]

Under the Due Process Clauses of the Fifth and Fourteenth Amendments, and controlling precedent, Plaintiffs' allegations do not provide a basis for a U.S. court to exercise personal jurisdiction over the Foreign Defendants.  Plaintiffs cannot plead general jurisdiction over the Foreign Defendants because these Defendants are not "at home" in the United States.  *See Daimler AG v. Bauman*, 571 U.S. 117, 136–39 (2014).  Plaintiffs concede that every Foreign Defendant is domiciled abroad, *i.e.*, is incorporated and has its principal place of business in a foreign country—facts that foreclose the exercise of general jurisdiction.

Plaintiffs do not plead specific jurisdiction over the Foreign Defendants.  Plaintiffs' allegations do not establish that the Foreign Defendants' "suit-related" conduct—the sale or provision of medicines and medical equipment to a foreign government ministry—is substantially connected to the United States.  *See Walden v. Fiore*, 571 U.S. 277, 283–84, 286 (2014).  Plaintiffs allege that the Foreign Defendants' transactions occurred in, were expressly aimed at, and indirectly aided attacks in Iraq.  Plaintiffs allege that the attacks injured U.S. nationals, but "injury to a forum resident is not a sufficient connection to the forum."  *Id.* at 289–90.  Rather, personal jurisdiction depends on the defendant's contacts with the *U.S. forum itself*, not just persons who

---

[2] Defendants deny all alleged wrongdoing, but address Plaintiffs' allegations as required on their motions.

reside there, and it requires that a plaintiff's cause of action "arise out of contacts that the defendant *himself* creates with the forum." *Id.* at 284 (emphasis in original).[3]  Plaintiffs' allegations fall short. Their allegations that the Foreign Defendants sold medicines and medical equipment in Iraq, to an Iraqi government ministry, to supply the Iraqi healthcare market, do not establish that these companies had sufficient contacts with, or purposefully directed their conduct at, the United States.

The SAC contains only sparse allegations of U.S. conduct, all of which are non-tortious and tangential to Plaintiffs' claims, and are therefore insufficient to confer personal jurisdiction over the Foreign Defendants.  Specifically, the SAC includes: (1) assertions that the Foreign Defendants paid processing fees *that are not alleged to have been wrongful* in connection with letters of credit issued by an Iraqi bank and that those payments passed through a U.S. correspondent bank account; (2) allegations that the Foreign Defendants sourced some of the goods they sold to the Ministry of Health, or some of the ingredients for those goods, from the United States—allegations that do not suggest any wrongful conduct and are tangential to Plaintiffs' claims; and (3) allegations that improperly conflate the Foreign Defendants with distinct domestic corporate entities.  These alleged U.S. contacts are not jurisdictionally relevant "suit-related" conduct.

Moreover, even if Plaintiffs had adequately alleged that the Foreign Defendants engaged in or purposefully directed conduct at the United States, personal jurisdiction would still be lacking over these Defendants because Plaintiffs' allegations cannot establish that any such conduct was the proximate cause—or even a but-for cause—of Plaintiffs' injuries.

As for their state-law claims, Plaintiffs have not identified any statutory basis for exercising personal jurisdiction over *any* Defendant (foreign or domestic) in the District of Columbia.  Nor

---

[3] Unless otherwise specified, internal citations and quotation marks are omitted.

have they alleged any contacts between any Defendant and this forum.  While some *Plaintiffs* may reside in the District, that is not a basis for establishing jurisdiction there over the *Defendants*.

## BACKGROUND

Plaintiffs allege that the Foreign Defendants are domiciled abroad.[4]  Plaintiffs do not allege that the Foreign Defendants have any offices or employees located in the United States, nor do Plaintiffs allege that the Foreign Defendants manufacture or sell products in the United States.

Plaintiffs assert claims against the Foreign Defendants based on transactions that the Foreign Defendants allegedly entered into in Iraq.  Specifically, Plaintiffs allege that the Foreign Defendants provided the Ministry and Kimadia officers in Iraq with medicines, equipment, and cash in connection with medical supply agreements that the Foreign Defendants entered into with the Ministry.  *See* SAC ¶¶ 4–6.  According to Plaintiffs, the Foreign Defendants' "agents negotiated and memorialized those transactions at in-person meetings inside the Ministry's headquarters building in Baghdad," *id.* ¶ 10, "the goods" that were the subjects of the supply agreements were shipped "into Iraq," *id.* ¶ 128, and employees of the Ministry and Kimadia received "kickbacks" as part of this process, *see id.* ¶¶ 4–6, 116–64.  Plaintiffs also allege that some unspecified amount of the Foreign Defendants' products and payments were subsequently looted from the Ministry and redirected to JAM, an Iraqi insurgent militia, which in turn allegedly

---

[4] The SAC alleges that AstraZeneca UK Limited is incorporated and has its principal place of business in the United Kingdom, SAC ¶ 17; that GE Medical Systems Information Technologies GmbH is incorporated and has its principal place of business in Germany, *id.* ¶ 21; that Cilag GmbH International is incorporated and has its principal place of business in Switzerland, *id.* ¶ 23; that Janssen Pharmaceutica NV is incorporated and has its principal place of business in Belgium, *id.* ¶ 27; that Pfizer Enterprises SARL is incorporated and has its principal place of business in Belgium, *id.* ¶ 31; and that F. Hoffmann-La Roche Ltd is incorporated and has its principal place of business in Switzerland, *id.* ¶ 35.

used the proceeds to fund attacks in Iraq, including those that injured or killed the Plaintiffs or their relatives stationed there.  *See id.* ¶¶ 1, 3–4, 165–79, 333–46, 408–3180.

The SAC alleges only two categories of conduct that occurred in the United States, neither of which is alleged to violate the ATA or state law.  First, the SAC alleges, on information and belief, that the Foreign Defendants paid processing fees for letters of credit issued by the Trade Bank of Iraq, and that those payments passed through a JPMorgan Chase correspondent account in New York.  SAC ¶¶ 124–27, 209, 244, 280, 309, 332.  Plaintiffs purportedly base these allegations on two transactions involving one Foreign Defendant, but they do not otherwise identify such transactions involving any other Defendant.  *Id.* ¶ 126(a).  Further, the SAC does not allege that any funds paid by anyone at any time to the Trade Bank of Iraq were corrupt or used to fund any attack in Iraq.

Second, the SAC alleges that some of the Foreign Defendants' contracts with Kimadia called for goods that were sourced from the United States.  *See, e.g.*, SAC ¶ 12.  However, the SAC does not dispute Defendants' showing that many of the contracts at issue actually were for the sale of goods that were expressly certified as having originated from *outside* the United States.[5] For example, *all* of the purported Cilag GmbH International and Janssen Pharmaceutica NV contracts with Kimadia cited in the SAC state that the goods they supplied to the Ministry originated in Switzerland or Germany.[6] Similarly, AstraZeneca UK Limited's contracts with

---

[5] Defendants made this showing in declarations and exhibits attached to their original motion to dismiss, which are included again in support of the current motion.  The Court may consider these declarations and exhibits because documents "that are referenced in, or are an integral part of, the complaint," such as contracts cited in the SAC, are considered part of the pleadings.  *Lurensky v. Wellinghoff*, 167 F. Supp. 3d 1, 14 n.7 (D.D.C. 2016).

[6] The SAC cites four contracts allegedly concerning Cilag or Janssen drugs, but as the SAC concedes, one of these contracts (for the drug Remicade) was controlled by non-party Merck during the relevant time period.  SAC ¶ 252 n.207.  The remaining three contracts each
(….continued)

5

Kimadia specify a country other than the United States as the origin of at least three of the four drugs named in the SAC;[7] two of F. Hoffmann-La Roche Ltd's contracts specify that the goods must originate in Switzerland;[8] and the only alleged Pfizer Enterprises SARL contract that the Pfizer Defendants have been able to locate specifies Belgium as the origin of the goods sold to Kimadia.[9]  The SAC also explains that Kimadia listed countries of origin in its contracts to guard against "counterfeit drugs."  *Id.* ¶ 122.

Acknowledging that many of the goods at issue were manufactured outside of the United States, Plaintiffs now make the more limited allegation that the active pharmaceutical ingredients of certain drugs were manufactured in the United States.  SAC ¶ 122; *see, e.g.*, *id.* ¶¶ 204–06, 208, 238, 242–43, 276, 278–79, 304, 308, 312, 322–23, 325–31.  Plaintiffs do not allege that the place

---

(continued….)

state that the origin of the drugs was Switzerland or Germany.  *Compare* Declaration of John F. Baughman ("Baughman Decl."), Exs. 1–3, *with* SAC ¶ 276 (acknowledging same).  None of these documents refer to the United States.

[7] *Compare* Declaration of Paul S. Mishkin ("Mishkin Decl."), Ex. 2 (supply contract specifying the United Kingdom as the country of origin for Seroquel), *with* SAC ¶ 205 (acknowledging same); Mishkin Decl., Exs. 1, 4–5 (supply contracts specifying Italy and Japan as the countries of origin for Meronem), *with* SAC ¶ 206 (acknowledging same); *see also* Mishkin Decl., Exs. 3, 6–7 (supply contracts specifying the United Kingdom and Switzerland as the country of origin for Zoladex).

[8] *Compare* Declaration of David M. Zionts ("Zionts Decl."), Exs. 1–2 (supply contracts specifying Switzerland as the country of origin for MabThera and Pegasys), *with* SAC ¶ 326 (acknowledging same with respect to MabThera).  While the SAC's specific allegations about the remaining Roche contracts may be treated as true for the purpose of these motions to dismiss, F. Hoffmann-La Roche Ltd notes that its records reflect that the Herceptin contract cited in the SAC was canceled, and that it never contracted to deliver Avastin to Iraq between 2005 and 2011.

[9] *Compare* Declaration of Christopher N. Manning ("Manning Decl."), Ex. 1 (supply contract specifying Belgium as the country of origin for Solu-Medrol and all raw materials used in its production), *with* SAC ¶ 283 (alleging Pfizer sourced active pharmaceutical ingredient for its Solu-Medrol in Michigan).  Plaintiffs allege that Pfizer Enterprises SARL acted as the supplier on an alleged 2006 contract for Xyntha and an alleged 2007 contract for Depo-Provera, SAC ¶ 284, but the Pfizer Defendants have not been able to locate any such contracts, *see* Manning Decl., ¶ 4.

of manufacture of any active pharmaceutical ingredient, as distinct from the drug as a whole, was an express contractual term in any of the relevant contracts, and not one of the cited contracts located by Defendants and attached to this motion contains such a term.

Moreover, even as to goods manufactured (in whole or in part) in the United States, the SAC alleges only that corporate affiliates of the Foreign Defendants manufactured those goods; it does not allege that the Foreign Defendants themselves manufactured the goods (or otherwise conducted business relating to the goods) in the United States.  *E.g.*, SAC ¶¶ 191, 204–06, 208, 238, 242–43, 253, 276, 278–79, 284, 304, 308, 312, 322–23, 325–31.  Nor does the SAC allege that Plaintiffs' injuries arose from the manufacturing or sourcing of these goods, activities that are tangential to their claims and not alleged to have been wrongful in any way.

## ARGUMENT

## I.    LEGAL STANDARDS

Plaintiffs bear the burden of "mak[ing] a *prima facie* showing of the pertinent jurisdictional facts to survive a motion to dismiss for lack of personal jurisdiction."  *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56–57 (D.C. Cir. 2017).  That burden is not met by "[c]onclusory statements" or a "bare allegation of conspiracy or agency."  *Id.* at 57.

The Court may dismiss claims for lack of personal jurisdiction on the pleadings.  In so doing, the Court must "resolve factual disputes in favor of the plaintiff" but "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts."  *Id.* (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)).  The Court also is not required to accept factual allegations that are contradicted by documents incorporated by reference in the complaint, *Rivera v. Rosenberg & Assocs., LLC*, 142 F. Supp. 3d 149, 160–61 (D.D.C. 2015), or accept "legal conclusions cast in the form of factual allegations," *Helmer*, 393 F.3d at 209.

"When personal jurisdiction is challenged, the plaintiff must demonstrate that *each* defendant is subject to personal jurisdiction in the forum." *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 22 (D.D.C. 2014) (emphasis added) (citing *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)); *see also Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of [due process] . . . must be met as to each defendant over whom a . . . court exercises jurisdiction."). The Supreme Court has cautioned that "great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Siegel v. HSBC Holdings, PLC*, No. 17-cv-6593, 2018 WL 501610, at *3 (S.D.N.Y. Jan. 19, 2018) (quoting *Asahi Metal Indus. v. Superior Court*, 480 U.S. 102, 115 (1987)).[10]

The Foreign Defendants' challenge to personal jurisdiction over Plaintiffs' ATA claims is brought under the Due Process Clause of the Fifth Amendment, and the challenge made by all Defendants to personal jurisdiction over Plaintiffs' state-law claims is brought under the Due Process Clause of the Fourteenth Amendment. *See Livnat*, 851 F.3d at 54; *Canuto v. Mattis*, 273 F. Supp. 3d 127, 138–40 & n.14 (D.D.C. 2017). The same legal standards apply to both personal jurisdiction challenges; however, the analysis under the Fifth Amendment considers a defendant's contacts with the United States as a whole. *Livnat*, 851 F.3d at 54–55.

---

[10] All but one of the Foreign Defendants waived service pursuant to Federal Rule of Civil Procedure 4(d) with the stipulation that such waiver of service did not waive personal jurisdiction defenses or otherwise confer jurisdiction over the stipulating defendants. *See* Dkts. 30, 42, 49, 56. F. Hoffmann-La Roche Ltd acknowledges that the Court authorized alternative means of service on it under Rule 4(f)(3), while preserving its position that it has not been adequately served. While "proper service is [a] necessary part of bringing a defendant to court, it is by itself not sufficient to allow a court to exercise personal jurisdiction." *Kaupthing ehf. v. Bricklayers & Trowel Trades Int'l Pension Fund Liquidation Portfolio*, 291 F. Supp. 3d 21, 33 (D.D.C. 2017) (alteration in original); *see also* Fed. R. Civ. P. 4(d)(5).

## II.   ASSERTING PERSONAL JURISDICTION OVER THE FOREIGN DEFENDANTS WITH RESPECT TO PLAINTIFFS' ATA CLAIMS WOULD VIOLATE DUE PROCESS

To satisfy due process, Plaintiffs have the burden to establish either general or specific jurisdiction over each defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Livnat*, 851 F.3d at 56. By contrast, specific jurisdiction requires an "affiliation between the forum and the underlying controversy." *Id.* These "[d]ue process limits on the [forum's] adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 571 U.S. at 284. Neither basis for jurisdiction exists as to the Foreign Defendants.

### A.   Plaintiffs Cannot Establish General Jurisdiction Over Any Of The Foreign Defendants Because None Of Them Is "At Home" In The United States

The Supreme Court held in *Daimler AG v. Bauman* that "a court may assert [general] jurisdiction over a foreign corporation 'to hear any and all claims against [it]' only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" 571 U.S. at 122 (quoting *Goodyear*, 564 U.S. at 919). In other words, "[d]ue process permits general jurisdiction based on only a limited set of affiliations with a forum, all analogous to an individual's domicile." *Livnat*, 851 F.3d at 56. For a corporation, the "paradigm bases for general jurisdiction" are its "place of incorporation and principal place of business." *Daimler*, 571 U.S. at 122 (alterations omitted).

Plaintiffs do not contend that any of the Foreign Defendants is domiciled or otherwise "at home" in the United States. Plaintiffs expressly allege that each Foreign Defendant is incorporated abroad and has its principal place of business outside the United States. *See* SAC ¶¶ 17, 21, 23, 27, 31, 35. And Plaintiffs have not attempted to allege that any Foreign Defendant's U.S. contacts

present the type of "exceptional case" that would nevertheless render that defendant "at home" in the United States. *Daimler*, 571 U.S. at 139 n.19.  Therefore, the Court may not assert general personal jurisdiction over any of the Foreign Defendants consistent with due process.

**B.    Plaintiffs Have Not Pleaded Specific Jurisdiction Over Any Of The Foreign Defendants Because None Of The Alleged Suit-Related Conduct Occurred In Or Was Purposefully Directed At The United States**

Specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283–84.  For specific jurisdiction to exist, "the defendant's suit-related conduct must create a substantial connection with the forum." *Id.* at 283–84, 286.  "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum," and be based on "the defendant's contacts with the forum . . . itself, not the defendant's contacts with persons who reside there." *Id.* at 284–85 (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Where the defendant's relevant, suit-related conduct is not substantially connected to the forum, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the [forum]." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017).  A defendant's suit-related conduct is that conduct which gave rise to the alleged tort or statutory violation. *See Walden*, 571 U.S. at 289 (question is whether defendant's "challenged conduct" had a substantial connection to forum).[11]  In an ATA claim, "[t]he relevant 'suit-related conduct' by the defendants [is] the conduct that could have subjected

---

[11] *See also, e.g.*, *Axiom Foods, Inc. v. Acerchem Int'l Inc.*, 874 F.3d 1064, 1070–71 (9th Cir. 2017) (specific jurisdiction lacking where defendant's suit-related conduct, the "alleged [copyright] infringement, barely connected" it to the forum); *Picot v. Weston*, 780 F.3d 1206, 1215 & n.3 (9th Cir. 2015) (declining to exercise jurisdiction where defendant's "allegedly tortious conduct" was not connected sufficiently to the forum); *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014) (only jurisdictionally relevant sales in trademark infringement action were those "related to [defendant's] allegedly unlawful activity").

them to liability under the ATA." *Waldman v. PLO*, 835 F.3d 317, 335 (2d Cir. 2016) (quoting *Walden*, 571 U.S. at 284), *cert. denied sub nom. Sokolow v. PLO*, 138 S. Ct. 1438 (2018).

Plaintiffs fail to plead specific jurisdiction over the Foreign Defendants for their ATA claims because the Foreign Defendants' alleged suit-related conduct—their transactions with the Ministry—occurred in Iraq and was not purposefully directed at the United States. *See infra* Part II.B.1.  The limited U.S. contacts that Plaintiffs attribute to the Foreign Defendants—the alleged payment of banking fees to the Trade Bank of Iraq through a U.S. correspondent bank account and the alleged sourcing of certain goods (or some ingredients in those goods) from the United States—are tangential to Plaintiffs' claims and are not alleged to have involved any wrongful conduct that could subject the Foreign Defendants to liability under the ATA.  These incidental contacts therefore do not constitute relevant suit-related conduct for the purposes of the specific jurisdiction determination.  *See infra* Part II.B.2.  Plaintiffs' attempts to bootstrap jurisdiction through allegations that the Foreign Defendants are part of "globally integrated compan[ies]" or acted as "agents" of domestic corporate affiliates ignore bedrock principles of corporate separateness.  *See infra* Part II.B.3.  Moreover, the Foreign Defendants' limited U.S. contacts do not provide a sufficient basis for the Court to exercise specific jurisdiction because those alleged contacts were neither the proximate cause, nor a but-for cause, of the harm that Plaintiffs allege. *See infra* Part II.B.4.

### 1.    The Foreign Defendants' Alleged Suit-Related Conduct Occurred Abroad and Was Not Purposefully Directed at the United States

The Court lacks specific jurisdiction over the Foreign Defendants because the alleged "suit-related conduct" on which Plaintiffs base their claims is not "substantial[ly] connect[ed]" to the United States.  *Walden*, 571 U.S. at 284.  Each aspect of the Foreign Defendants' conduct that Plaintiffs now allege was improper occurred in Iraq, not the United States:

- **Contract terms were set in Iraq and governed by Iraqi law**—The SAC alleges that Kimadia set terms for the contracts, using its standard bid procedures to instruct companies to include the allegedly corrupt terms in their bids.  SAC ¶ 120.  Moreover, based on all the contracts identified in the SAC that the Foreign Defendants have located, Kimadia's contracts specified that Iraqi law would govern the parties' contracts and that any disputes arising under them would be adjudicated in Iraqi courts.  *See, e.g.*, Baughman Decl., Exs. 1–3; Mishkin Decl., Exs. 1–8; Zionts Decl., Exs. 1–2; Manning Decl., Ex. 1; SAC ¶¶ 216–17 (citing 2010 GE Foreign Defendant's contract for electrocardiographs).

- **Contracts were hand-delivered in Iraq**—The SAC alleges that after the bids were submitted to Kimadia and a company won the tendering round for a given product, the formal sales contract was required to be delivered "in person to [Ministry] officials inside the Ministry headquarters building in Baghdad."  SAC ¶ 121.

- **Alleged corruption occurred in Iraq**—The SAC alleges that the Foreign Defendants supplied products and made corrupt in-kind donations or payments to Iraqi officials at the Ministry through various means, none of which are alleged to have involved meetings, financial transfers, or any other allegedly corrupt activity outside Iraq, let alone in the United States.  *See, e.g.*, *id.* ¶¶ 128, 133–37, 142–64.

- **Alleged terrorist funding and attacks occurred in Iraq**—The products and payments were then allegedly looted by JAM, an armed militia of Iraqi insurgents, and, after at least a portion of the in-kind payments were allegedly sold on the black market in Iraq (and neighboring countries), the funds were allegedly used to support JAM's attacks in Iraq.  *See, e.g.*, *id.* ¶¶ 109, 165–79, 333–46, 408–3180.

Plaintiffs' ATA claims are predicated on *this conduct*, which lacks any meaningful (let alone "substantial") connection to the United States.  Indeed, the SAC states that JAM's alleged attacks, and Defendants' alleged provision of material support and funds to JAM, all "occurred primarily outside the territorial jurisdiction of the United States."  *Id.* ¶¶ 3185, 3203, 3212, 3219.

Plaintiffs cannot overcome the foreign locus of this conduct by claiming that the Foreign Defendants "purposefully directed" or "expressly aimed" their foreign conduct at the United States.  *See Nuevos Destinos LLC v. Peck*, No. 15-cv-1846 (EGS), 2019 WL 78780, at *9 (D.D.C. Jan. 2, 2019) ("Because all of the [defendants'] allegedly injurious conduct occurred abroad, 'jurisdiction is proper only if the defendant has "purposefully directed" [its] activities towards the forum . . . .'" (quoting *Estate of Klieman v. Palestinian Auth.*, 82 F. Supp. 3d 237, 246 (D.D.C. 2015))); *see also*

*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) ("[S]pecific personal jurisdiction properly exists where the defendant took 'intentional, and allegedly tortious, actions . . . expressly aimed' at the forum." (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984))).

Plaintiffs' allegation that the Foreign Defendants directed their conduct at Iraq specifically to further their commercial activity in the Iraqi healthcare market squarely forecloses any prospect of establishing personal jurisdiction based on a purposeful direction theory. *See* SAC ¶¶ 114–15 (alleging that "Defendants made corrupt payments . . . to exploit a post-Saddam Iraqi healthcare market that was generally perceived to be on the verge of rapid growth" and to "grow their market share in Iraq"). As the Second Circuit found in *Waldman*, "it cannot be said that the United States is the focal point of the torts alleged in this litigation. In this case, the United States is not the nucleus of the harm"—Iraq is. 835 F.3d at 340; *see also Walden*, 571 U.S. at 286–87 (explaining that in *Calder*, 465 U.S. at 789, jurisdiction existed in the forum that was the "focal point" both of the allegedly tortious conduct and of the harm suffered); *Safra v. Palestinian Auth.*, 82 F. Supp. 3d 37, 51–52 (D.D.C. 2015) (finding the United States was not the focal point of claims based on an attack at religious site in the West Bank, noting all of the defendant's alleged "enabling actions" of the terrorist who committed the attack took place outside the United States), *aff'd sub nom. Livnat*, 851 F.3d 45; *see also Estate of Klieman*, 82 F. Supp. 3d at 248.

The Second Circuit's decision in *In re Terrorist Attacks* compels dismissal. There, the Second Circuit held that U.S. courts could not assert personal jurisdiction over foreign defendants, including four Saudi princes, who contributed money to charities while allegedly knowing that the charities would fund al Qaeda. 538 F.3d 71, 94–95 (2008), *abrogated on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010). Allegations that the princes "were reckless in monitoring how their donations were spent, or could and did foresee that recipients of their

donations would attack targets in the United States," did not show that the princes engaged in "intentional tortious acts" "expressly aimed" at the United States. *Id.* Nor were allegations that the princes "intended to fund al Qaeda through their donations" sufficient to satisfy plaintiffs' burden. *Id.* at 95. While al Qaeda's hostility toward the United States and prior attacks on U.S. interests abroad might have made acts of violence against Americans "a foreseeable consequence of the princes' alleged indirect funding of al Qaeda," this foreseeability—of causing injury in another forum or to its residents—"is not the standard for recognizing personal jurisdiction." *Id.*; *see also In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 3d 416, 426, 430 (S.D.N.Y. 2018) (dismissing similar claims against two Saudi banks and a Saudi construction company because "provid[ing] indirect funding to an organization openly hostile to the United States" is insufficient for purposes of establishing specific jurisdiction).

As in *In re Terrorist Attacks*, Plaintiffs allege that the Defendants knowingly or recklessly "[p]rovid[ed] indirect funding to an organization that was openly hostile to the United States." 538 F.3d at 95; *see also* SAC ¶ 180 ("Defendants knew or recklessly disregarded that their corrupt transactions with MOH financed Jaysh al-Mahdi terrorist attacks."). But such allegations "do[] not constitute [the] type of intentional [tortious] conduct" that is "expressly aimed" at the United States. 538 F.3d 71 at 95; *Burnett v. Al Baraka Inv. & Dev. Corp.*, 292 F. Supp. 2d 9, 21–23 (D.D.C. 2003) (finding lack of personal jurisdiction over Saudi prince in lawsuit relating to Sept. 11, 2001 terrorist attacks because allegations that he donated to Islamic charities "knowing that those foundations funded terrorist organizations including Al Qaeda . . . stop[] well short of alleging that [the Prince's] actions were 'expressly aimed' or 'purposefully directed' at the United States"). Indeed, the absence of jurisdiction is clearer here than in either *In re Terrorist Attacks* or *Burnett*, because the attacks in this case occurred in Iraq, not the United States, and because it is implausible

on its face that the Foreign Defendants intended to fund JAM or knowingly supported attacks on U.S. citizens.  *See* Defs.' 12(b)(1) and 12(b)(6) Mot. Part III.B.

That JAM attacked U.S. citizens is also insufficient to establish that the Foreign Defendants "purposefully directed" *their conduct* at the United States.  The proper question is not whether the third-party *attackers* aimed some of their conduct at U.S. citizens in Iraq, but whether *the Foreign Defendants* aimed their conduct at the United States.  *See Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State."); *id.* at 284 ("[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum . . . ." (quoting *Burger King*, 471 U.S. at 475)).  Moreover, personal jurisdiction must be based on "the defendant's contacts with the forum . . . itself, not the defendant's contacts with persons who reside there."  *Id.* at 285.  Because the Foreign Defendants' "relevant conduct occurred entirely [abroad], . . . the mere fact that [this] conduct affected plaintiffs with connections to the [United States] does not suffice to authorize jurisdiction."  *Id.* at 291; *see also id.* at 289 (rejecting the plaintiffs' attempt to base specific jurisdiction on allegations that the defendant "directed his conduct at plaintiffs whom he knew had [forum] connections," because "[s]uch reasoning improperly attributes a plaintiff's forum connections to the defendant").

### 2.     Plaintiffs' Allegations of Limited U.S. Contacts Are Not Relevant "Suit-Related Conduct"

Despite the entirely foreign locus of the Foreign Defendants' alleged misconduct, Plaintiffs seek to hale the Foreign Defendants into a U.S. court based on allegations of limited U.S. contacts peripheral to Plaintiffs' claims.  These allegations fail to support specific jurisdiction.  To determine whether such jurisdiction exists, "[t]he question . . . is whether the defendants' suit-related conduct . . . creates a substantial connection with the forum . . . pursuant to the ATA.  The relevant 'suit-related conduct' by the defendants was the conduct that could have subjected them to

liability under the ATA." *Waldman*, 835 F.3d at 335.  Because none of the Foreign Defendants' alleged U.S. contacts consist of "conduct that could have subjected them to liability under the ATA," those contacts do not provide a basis for specific jurisdiction over the Foreign Defendants.

*First*, Plaintiffs rely on purported contacts with the New York banking system.  *See* SAC ¶ 12.  Plaintiffs allege that the Foreign Defendants credited the Trade Bank of Iraq's New York correspondent account to pay for banking fees associated with letters of credit that guaranteed Kimadia's payment to the Foreign Defendants under the parties' contracts.  *Id.* ¶¶ 12, 124–27, 209, 244, 280, 309, 332.

Plaintiffs' attempt to base jurisdiction on the use of New York correspondent bank transactions fails for a simple reason: any alleged payment of fees to the Trade Bank of Iraq is irrelevant to Plaintiffs' claims.  Plaintiffs do not allege that their claims arise out of these payments, or that the "banking charges" Defendants allegedly reimbursed ever aided in any attack.  Nor do Plaintiffs even allege that the letters of credit involved corrupt or wrongful payments.  According to Plaintiffs, the purpose of the letters of credit was simply to secure payment *to the Foreign Defendants*.  *See* SAC ¶ 127.

The allegations here thus stand in stark contrast to those in cases such as *Licci v. Lebanese Canadian Bank*, where a defendant's "selection and repeated use of [the United States] banking system" as "an instrument to achieve the very wrong alleged" was sufficient to establish personal jurisdiction.  732 F.3d 161, 171–72 & n.7 (2d Cir. 2013).  In *Licci*, the Second Circuit found personal jurisdiction in the United States over a Lebanese bank where the bank allegedly violated the ATA by using its U.S. correspondent bank account to transfer funds on behalf of Hezbollah, knowing that it would assist Hezbollah's terrorist attacks in Israel.  *Id.* at 165–66, 171–72.  The use of the U.S. correspondent bank account itself constituted the wrongful conduct "at which the

16

plaintiffs' lawsuit [was] directed." *Id.* at 170; *see also, e.g.*, *Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 28–30 (E.D.N.Y. 2016) (finding jurisdiction over a French bank because it allegedly processed transfers to Hamas fronts through its New York branch, in violation of the ATA).  Here, there are no such allegations.  Plaintiffs' lawsuit involves the provision of medicines and medical equipment in Iraq, not banking services in the United States, and the only alleged use of U.S. correspondent accounts was to make legitimate payments of processing fees to a third-party, state bank—with no allegation that the fees were redirected to JAM or used to fund any attack.  *See Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 618 (10th Cir. 2012) (holding foreign defendant's various "tangential" contacts with a forum were insufficient to support jurisdiction); *Foster v. Arletty 3 SARL*, 278 F.3d 409, 415–16 (4th Cir. 2002) (holding no personal jurisdiction over defendant with "attenuated" and "only tangential connection to the forum").[12]

Even if the payment of legitimate processing fees through a correspondent account in New York were jurisdictionally relevant to Plaintiffs' claims of aiding terrorist attacks in Iraq, Plaintiffs offer no concrete factual allegations that each Foreign Defendant actually paid such fees to a U.S. account.  Plaintiffs speculate that each Foreign Defendant must have done so, *e.g.*, SAC ¶¶ 209, 244, 280, 309, 332, because one Defendant allegedly did and because the Trade Bank of Iraq has a relationship with JPMorgan, which has an office in New York (a global financial hub), *see id.* ¶ 126.  But Plaintiffs' speculative inference ignores that JPMorgan is an international bank; New York is one of many global financial hubs; and the Foreign Defendants' transactions with the

---

[12] Plaintiffs' reliance on the letters of credit is further undermined by the fact that the primary transactions relating to the contracts—Kimadia's payments for the purchased goods— involved foreign correspondent accounts.  Of the contracts named in the SAC that Foreign Defendants have located, each one specifies that Kimadia is to make payment to a correspondent account outside the United States. *See, e.g.*, Baughman Decl., Exs. 1–3; Mishkin Decl., Exs. 1–8; Zionts Decl., Exs. 1–2; Manning Decl., Ex. 1; SAC ¶¶ 216–17.

Ministry routinely used correspondent accounts, including JPMorgan accounts, located outside the United States. *See, e.g.*, Mishkin Decl., Exs. 4–7 (contracts with Kimadia provided for payment to AstraZeneca UK Limited's JPMorgan Chase correspondent bank account in the United Kingdom). The Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts," *Livnat*, 851 F.3d at 57, and without this unsupported leap, Plaintiffs do not separately plead that "each defendant" actually paid processing fees to a New York account, *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 20 (D.D.C. 2017).

*Second*, Plaintiffs allege that goods the Foreign Defendants donated or sold to the Ministry were manufactured (in whole or in part) in the United States. *See, e.g.*, SAC ¶¶ 12, 156, 191, 204–06, 208, 238, 242–43, 253, 276, 278–79, 284, 304, 308, 312, 322–23, 325–31.  But those allegations are likewise irrelevant because manufacturing or sourcing goods from the United States is not "conduct that could have subjected [the Foreign Defendants] to liability under the ATA." *Waldman*, 835 F.3d at 335.  Plaintiffs allege no wrongdoing in the manufacture of any medicine or medical equipment in the United States (in which the Foreign Defendants were not involved in any event) or in the Foreign Defendants' obtaining U.S.-manufactured products.  And in any event, Plaintiffs' claims do not arise out of the sourcing of U.S. products.  Thus, even if the Foreign Defendants had sourced all of the goods that they sold to Kimadia from the United States (which is far from true), that still would not be sufficient to establish jurisdiction.

Indeed, the Supreme Court recently held that a foreign defendant is not subject to specific jurisdiction because it used an in-forum distributor to sell its goods outside the forum.  In *Bristol-Myers*, the plaintiffs argued that a foreign defendant was subject to jurisdiction in California because the defendant had used a California-based company to distribute its product in the United States.  Rejecting this argument as a "last ditch contention," the Court found that "[t]he bare fact

that [Bristol-Myers] contracted with a California distributor is not enough to establish personal jurisdiction in the State." 137 S. Ct. at 1783. Like the "last ditch contention" rejected in *Bristol-Myers*, Plaintiffs' allegations that separate U.S. companies were part of a supply chain for products sold in Iraq fail to establish personal jurisdiction over the Foreign Defendants in the United States.

Moreover, the allegation that sourcing drugs from the United States was somehow key to the Foreign Defendants' transactions with Kimadia cannot be squared with the many contracts that required the Foreign Defendants to source goods from countries *other than* the United States. *See* Background *supra* at pp. 5–6 & nn.6–9. The SAC itself recognizes that Kimadia included sourcing specifications in its contracts to prevent the supply of "counterfeit drugs" by "guaranteeing that drugs would be made *in the proper* country of origin," SAC ¶ 122 (emphasis added), not because Kimadia specifically required U.S. goods. These provisions thus had nothing to do with the "kickbacks" or JAM attacks that Plaintiffs allege. Because the sourcing of Defendants' products is at best "tangential" to Plaintiffs' claims, it is irrelevant to personal jurisdiction whether some Kimadia contracts might have called for products manufactured (by other companies) in the United States.[13] *Monge*, 701 F.3d at 618; *see also Siegel*, 2018 WL 501610, at *4 (no personal jurisdiction in ATA case where, "even if [defendant had] contacts with the United States," the complaint failed to allege "that the plaintiffs' claims arise out of those contacts").[14]

---

[13] This conclusion is equally or more true with respect to Plaintiffs' allegations that the active pharmaceutical ingredients of certain drugs, but not the final drugs themselves, were manufactured in the United States. SAC ¶¶ 204–06, 208, 238, 242–43, 276, 278–79, 304, 308, 312, 322–23, 325–31. The manufacture of a drug's active pharmaceutical ingredient is not "suit-related" conduct and is highly tangential to Plaintiffs' claims.

[14] Plaintiffs further strain to create a U.S. nexus for their claims by alleging Kimadia required proof that the Food and Drug Administration ("FDA") had approved the contracted-for drugs, even for drugs sourced from outside the United States, and that Kimadia "prioritized" drugs with such approval. SAC ¶¶ 152–53, 208, 243, 279, 302, 331. But the value that the

(….continued)

### 3.     Plaintiffs Improperly Conflate Separate Corporate Affiliates

The Court should also reject Plaintiffs' improper attempt to bootstrap personal jurisdiction over the Foreign Defendants based on allegations that they were each "part of a globally integrated company" that included U.S. corporate affiliates.  *E.g.*, SAC ¶¶ 12, 203, 233–34, 237, 277, 296, 322.  Absent exceptional circumstances where a corporation is "so dominated" by another "as to negate its separate personality" under an alter ego theory, *Mazza v. Verizon Wash. DC, Inc.*, 852 F. Supp. 2d 28, 41 (D.D.C. 2012), Plaintiffs may not allege personal jurisdiction over a defendant based on its corporate affiliate's contacts with the forum.[15]  Plaintiffs do not come close to alleging such exceptional circumstances here.[16]  Plaintiffs do not allege that any of the Foreign Defendants failed to maintain corporate formalities (which alone is an "excellent litmus" test for corporate separateness);[17] failed to maintain corporate minutes or records; commingled funds and assets with domestic affiliates; diverted their funds to domestic affiliates' uses; used the same offices or business locations as their domestic affiliates; or engaged in any other conduct that would support

---

(continued….)

Ministry allegedly placed on FDA-approved drugs for safety reasons does not reflect suit-related U.S. conduct by the Foreign Defendants, and is thus jurisdictionally irrelevant.

[15] *See, e.g.*, *Clay v. Blue Hackle N. Am., LLC*, 907 F. Supp. 2d 85, 89 (D.D.C. 2012) (Leon, J.) (rejecting claims of personal jurisdiction over foreign defendants based on corporate affiliate's domestic contacts where plaintiffs did not show that the corporate affiliate "'so dominated [the foreign defendants] as to negate [their] separate personalit[ies]' under an alter ego theory" (second and third alterations in original) (quoting *Oceanic Exploration Co. v. ConocoPhillips, Inc.*, No. 04-cv-332 (EGS), 2006 WL 2711527, at *13 (D.D.C. Sept. 21, 2006))).

[16] Plaintiffs do not even allege that Foreign Defendants AstraZeneca UK Limited and F. Hoffmann-La Roche Ltd have U.S. parent corporations.  Their parents are alleged to be based in the United Kingdom and Switzerland, respectively.  SAC ¶¶ 17, 35.

[17] *Clay*, 907 F. Supp. 2d at 89 n.2 ("[R]elatively simple formalities of creating and maintaining a corporate entity are themselves an excellent litmus of the extent to which the individuals involved actually view the corporation as a separate being." (quoting *Labadie Coal Co. v. Black*, 672 F.2d 92, 97 (D.C. Cir. 1982))).

piercing the corporate veil here.  *See id.*  Plaintiffs' conclusory allegations lumping the Foreign Defendants together with their domestic affiliates should be rejected.[18]

Nor do Plaintiffs' allegations that the Foreign Defendants were "agents" of their U.S.-based affiliates provide a basis for personal jurisdiction.  *E.g.*, SAC ¶¶ 157, 193, 219, 255, 287, 314.  For jurisdictional purposes, the purported agency relationship points in the wrong direction: even if the Foreign Defendants had acted as *agents abroad* for domestic affiliates, that would have no bearing on whether the Foreign Defendants could be haled into court *in the United States.  See Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 138 (D.D.C. 2016) (holding that, "consistent with agency law, which provides that a *principal* can be liable for the actions of the *agent*," the D.C. long-arm statute "permits a court to exercise personal jurisdiction over a principal who is outside the District of Columbia [who] directs the conduct of an agent inside the District," but it "does not provide for the reverse, that is, it does not permit personal jurisdiction over an agent who is outside the District of Columbia just because his actions are controlled by a principal located inside the District of Columbia" (emphasis added)), *aff'd*, 690 F. App'x 1 (D.C. Cir. 2017).

Moreover, Plaintiffs do not adequately plead the elements of an agency relationship.  The SAC lacks any allegations that the Manufacturer Defendants had (or exercised) any control over the Foreign Defendants' relevant conduct, namely, the substance of the negotiations or the terms of the contracts at issue.  Failure to allege such control is fatal to the assertion of an agency relationship.  *See, e.g.*, *TransAmerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 849 (D.C. Cir. 2000); *Hull v. Eaton Corp.*, 825 F.2d 448, 457–58 (D.C. Cir. 1987).  And

---

[18] Notably, although the SAC alleges that "Roche" relied on Genentech Inc.'s manufacturing operations in the United States, it acknowledges that Genentech was *not* wholly owned until 2009, after nearly all of the conduct at issue is alleged to have taken place.  *See* SAC ¶¶ 36, 322.

allegations that the Manufacturers could have refused to allow the Supplier Defendants to sell their products, *see* SAC ¶ 157, are not a basis to claim an agency relationship, *see, e.g.*, *CNE Direct, Inc. v. Blackberry Corp.*, 821 F.3d 146, 151 (1st Cir. 2016); *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024–25 (9th Cir. 2017); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 112 (D.D.C. 2010).

### 4.    The Foreign Defendants' Alleged U.S. Contacts Did Not Cause Plaintiffs' Injuries

Plaintiffs independently fail to establish personal jurisdiction because they do not allege that the Foreign Defendants' U.S. contacts caused Plaintiffs' injuries.   To establish specific personal jurisdiction over a defendant, the claims must be "related to or arise[ ] out of a defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).   Plaintiffs must adequately allege "some sort of causal relationship between a defendant's U.S. contacts and the episode in suit." *Triple Up*, 235 F. Supp. 3d at 27 (quoting *Estate of Klieman*, 82 F. Supp. 3d at 247).

Courts in this district have not yet ruled on what standard of causation is required to establish specific personal jurisdiction over a defendant to a tort claim. *See id.* at 27 & n.7; *Estate of Klieman*, 82 F. Supp. 3d at 247.   However, this Court should follow the courts that have held that a plaintiff must plead that the defendant's contacts with the forum proximately caused the plaintiff's injury. *See, e.g.*, *Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 507–08 (6th Cir. 2014); *GCIU-Employer Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024 (7th Cir. 2009).   This standard best accounts for the principle that a defendant should not be haled into a forum based on "attenuated contacts" tangential to their claim, *Burger King*, 471 U.S. at 475;

22

otherwise, even insignificant forum contacts with a tenuous connection to a plaintiff's injury could serve as a basis for exercising personal jurisdiction, *see Beydoun*, 768 F.3d at 507–08.[19]

As more fully discussed in sections III.A and IV.A of the Memorandum in Support of Defendants' Rule 12(b)(1) and 12(b)(6) Motions to Dismiss, even the Foreign Defendants' alleged conduct *in Iraq* did not proximately cause Plaintiffs' injuries. The purported causal link between the Foreign Defendants' alleged *U.S.* contacts and Plaintiffs' injuries is even more remote. Plaintiffs do not and cannot allege that U.S.-based banking fees or the sourcing of medicines and medical equipment (or just pharmaceutical ingredients) from the United States proximately caused their injuries from attacks by JAM in Iraq. *See Siegel*, 2018 WL 501610, at *4 (holding no personal jurisdiction over foreign defendant where plaintiffs "failed to connect [defendant's alleged in-forum activities] to the [terrorist] attacks which . . . is the crux of this lawsuit").

Nor do Plaintiffs plead a but-for connection between the Foreign Defendants' alleged U.S. contacts and their contracts in Iraq, let alone between those U.S. contacts and Plaintiffs' injuries. Regarding the letters of credit, the SAC does not allege that the use of U.S. correspondent accounts to pay processing fees was necessary to the alleged scheme. *See* SAC ¶¶ 125–27; *see also supra* at pp. 17–18 & n.12 (observing that the Foreign Defendants' contracts with Kimadia specified payment through foreign correspondent accounts, and JPMorgan Chase, the bank utilized by the Trade Bank of Iraq, maintained such accounts outside the United States).

---

[19] Some Circuits apply a test that is slightly looser than traditional "proximate cause" but still substantially stricter than mere "but-for" causation. *See, e.g.*, *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 137 (1st Cir. 2006) ("[D]ue process demands something like a 'proximate cause' nexus" (quoting *Harlow v. Children's Hosp.*, 432 F.3d 50, 61 (1st Cir. 2005)); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 323 (3d Cir. 2007) (holding "specific jurisdiction requires a closer and more direct causal connection than that provided by the but-for test," but "looser than the tort concept of proximate causation"). *But see Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) (requiring but-for causation only). Plaintiffs' allegations here fail regardless of how precisely the necessary causal relationship is defined.

Causation also is lacking as to Plaintiffs' allegations concerning the sourcing of U.S.-manufactured goods.  The SAC alleges that it was "material" to Kimadia that its contracts specify "the country from which the supplier agreed to source the purchased drugs or devices," but not because Kimadia required goods to be sourced from the United States—rather, because "[Ministry] officials were suspicious of counterfeit drugs, and they insisted on contractual protections guaranteeing that drugs would be made in the proper country of origin."  SAC ¶ 122.  Notably, Plaintiffs allege that Kimadia imported goods that originated in Europe as well as the United States. *See id.* ¶ 153.  Moreover, the contracts cited in the SAC demonstrate that a U.S. origin was not a necessary term of Foreign Defendants' contracts, as many called for goods originating in Belgium, Italy, Japan, Switzerland, and the United Kingdom.  *See* Baughman Decl., Exs. 1–3; Mishkin Decl., Exs. 1–7; Manning Decl., Ex. 1; Zionts Decl., Exs. 1–2.[20]

Even if the Foreign Defendants' alleged U.S. contacts somehow were a cause-in-fact of their Kimadia contracts, that would not make them a cause-in-fact of every alleged JAM attack. Many of the Foreign Defendants' contracts did not even involve U.S.-manufactured goods, and in any event, the Foreign Defendants' contracts were only a fraction of the Ministry's massive budget, which Plaintiffs allege JAM thoroughly "looted."  *See* SAC ¶¶ 3, 116, 138, 198, 221, 261, 291, 318. Meanwhile, JAM allegedly siphoned off the resources of three other ministries, *see id.* ¶ 173, and Iran and its proxy, Hezbollah, allegedly purchased and "supplied many of the weapons" used by JAM, *see id.* ¶¶ 404–06.  On the basis of these allegations, Plaintiffs cannot plausibly allege that

---

[20] Nor is it alleged that Kimadia entered into supply contracts requiring that a drug's active ingredients be manufactured in the United States.  The happenstance of some of the drugs' supply chains including some activity in the United States (by other manufacturers) is insufficient to assert personal jurisdiction over the Foreign Defendants.  *See Bristol-Myers*, 137 S. Ct. at 1783.

any, let alone each, JAM attack would not have occurred but for the Foreign Defendants' insubstantial and tangential U.S. contacts.

## III.   PLAINTIFFS HAVE NOT PLEADED PERSONAL JURISDICTION OVER THEIR STATE-LAW CLAIMS AGAINST ALL DEFENDANTS

Plaintiffs fail to plead that any Defendants had any contacts, much less constitutionally sufficient contacts, with the District of Columbia—as required to establish personal jurisdiction as to their state-law claims. *See, e.g.*, *Upshaw v. Progressive Ins. Co.*, 292 F. Supp. 3d 205, 209 (D.D.C. 2017). The only references in the SAC to the District of Columbia concern certain *Plaintiffs'* contacts with the jurisdiction. *See* SAC ¶¶ 468, 484, 552, 570, 616, 618, 640, 677, 698, 741, 780, 972, 1739. Such allegations do not provide a basis for asserting personal jurisdiction over any Defendant. *See Walden*, 571 U.S. at 284–85. Plaintiffs also have not alleged any statutory basis for asserting such jurisdiction. *See* SAC ¶¶ 39, 3222–54. Plaintiffs cite Federal Rules of Civil Procedure 4(k)(1)(C) and 4(k)(2) and 18 U.S.C. § 2334(a), but none of those provisions apply to their state-law claims. Plaintiffs have therefore failed to plead personal jurisdiction over any Defendant as to the state-law claims.

## CONCLUSION

For the foregoing reasons, the Foreign Defendants respectfully request that all claims against them be dismissed under Rule 12(b)(2) for lack of personal jurisdiction, and the Domestic Defendants respectfully join in this request as to the state-law claims.

Dated:  April 4, 2019

Respectfully submitted,

/s/ Neil H. MacBride
Neil H. MacBride (D.C. Bar No. 439137)
Kenneth L. Wainstein (D.C. Bar No. 451058)
DAVIS POLK & WARDWELL LLP
901 15th Street, N.W.
Washington, DC 20005
Tel: (202) 962-7030; Fax: (202) 962-7118
neil.macbride@davispolk.com

/s/ John B. Bellinger
John B. Bellinger III (D.C. Bar No. 405059)
David J. Weiner (D.C. Bar No. 499806)
Robert A. DeRise (D.C. Bar No. 1005355)
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., N.W.
Washington, DC 20001
(202) 942-5000
john.bellinger@arnoldporter.com

Paul S. Mishkin (admitted *pro hac vice*)
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, NY 10017
Tel: (212) 450-4292; Fax: (212) 701-5292
paul.mishkin@davispolk.com

*Counsel for Defendants AstraZeneca
Pharmaceuticals LP and AstraZeneca UK
Limited*

Robert Reeves Anderson (D.C. Bar No.
994989)
ARNOLD & PORTER KAYE SCHOLER
LLP
370 Seventeenth Street, Suite 4400
Denver, CO 80202-1370
(303) 863-2325
Reeves.Anderson@arnoldporter.com

*Counsel for Defendants GE Healthcare USA
Holding LLC, GE Medical Systems
Information Technologies, Inc., and GE
Medical Systems Information Technologies
GmbH*

(signatures continue on next page)

26

/s/ Jeh C. Johnson
Jeh C. Johnson (D.C. Bar No. 461627)
Kannon K. Shanmugam (D.C. Bar No. 474304)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006-1047
(202) 223-7300
jjohnson@paulweiss.com

John F. Baughman (D.C. Bar No. NY0254)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019-6064
(212) 373-3000
jbaughman@paulweiss.com

*Counsel for Defendants Johnson & Johnson, Cilag GmbH International, Ethicon Endo-Surgery, LLC, Ethicon, Inc., Janssen Ortho LLC, Janssen Pharmaceutica NV, Johnson & Johnson (Middle East) Inc., and Ortho Biologics LLC*

/s/ Joseph G. Petrosinelli
Joseph G. Petrosinelli (D.C. Bar No. 434280)
Christopher N. Manning (D.C. Bar No. 464069)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
jpetrosinelli@wc.com

*Counsel for Defendants Pfizer Inc., Pfizer Enterprises SARL, Pfizer Pharmaceuticals LLC, Pharmacia & Upjohn Company LLC, and Wyeth Pharmaceuticals Inc.*

/s/ John E. Hall
John E. Hall (D.C. Bar No. 415364)
Beth S. Brinkmann (D.C. Bar No. 477771)
David M. Zionts (D.C. Bar No. 995170)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street N.W.
Washington, DC 20001
Telephone: (202) 662-5987
Facsimile: (202) 778-5987
jhall@cov.com

*Counsel for Defendant F. Hoffmann-La Roche Ltd*

/s/ Patrick J. Carome
Patrick J. Carome (D.C. Bar No. 385676)
David W. Bowker (D.C. Bar No. 989309)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
patrick.carome@wilmerhale.com

*Counsel for Defendants Genentech, Inc. and Hoffmann-La Roche Inc.*