**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOSHUA ATCHLEY *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1:17-CV-02136 (RJL) |
| v. | ) | |
| | ) | |
| ASTRAZENECA UK LIMITED *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**FOREIGN DEFENDANTS' MOTION TO DISMISS ALL CLAIMS AND**
**DOMESTIC DEFENDANTS' MOTION TO DISMISS THE STATE LAW CLAIMS**
**FOR LACK OF PERSONAL JURISDICTION**

# TABLE OF CONTENTS

PAGE

INTRODUCTION ........................................................................................................... 1

I.  FOREIGN DEFENDANTS ARE NOT SUBJECT TO PERSONAL
    JURISDICTION IN THE UNITED STATES .................................................. 2

    A.  Foreign Defendants Did Not Expressly Aim Their Conduct At This Forum ........ 2

    B.  Plaintiffs' Claims Do Not Have A Substantial Connection To The United
        States And Did Not Arise Out Of Foreign Defendants' U.S. Contacts ................. 4

        1.  That Some of the Goods Foreign Defendants Sold in Iraq
            Originated from U.S. Manufacturers Is Not a Basis for Jurisdiction.......... 5

        2.  Plaintiffs Cannot Base Jurisdiction on the Conduct of Separate
            U.S. Companies That Are Merely Affiliates of Foreign Defendants ........ 8

        3.  The Alleged Payment of Lawful Processing Fees to a Third-Party
            U.S. Account Does Not Support Jurisdiction ........................................... 9

        4.  The Alleged U.S. Contacts Did Not Cause Plaintiffs' Injuries................. 10

II.  THERE IS NO JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS .......... 12

III. PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY .............. 12

CONCLUSION.......................................................................................................... 12

# TABLE OF AUTHORITIES

### CASE(S)

PAGE(S)

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*,
    503 F.3d 544 (6th Cir. 2007) ................................................................7

*Beydoun v. Wataniya Rests. Holding, Q.S.C.*,
    768 F.3d 499 (6th Cir. 2014) ..............................................................10

*Bristol-Myers Squibb Co. v. Superior Court*,
    137 S. Ct. 1773 (2017)........................................................................9

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)...........................................................................12

*Clay v. Blue Hackle N. Am., LLC*,
    907 F. Supp. 2d 85 (D.D.C. 2012) ......................................................9

*Estate of Klieman v. Palestinian Auth.*,
    No. 15-7034, 2019 WL 2093018 (D.C. Cir. May 14, 2019) .........................................3, 11, 12

*Fin. Gen. Bankshares, Inc. v. Metzger*,
    680 F.2d 768 (D.C. Cir. 1982) ...........................................................12

*Helmer v. Doletskaya*,
    393 F.3d 201 (D.C. Cir. 2004) .........................................................7, 8

*IMAPizza, LLC v. At Pizza Ltd.*,
    334 F. Supp. 3d 95 (D.D.C. 2018) ......................................................7

*Keeton v. Hustler Mag., Inc.*,
    465 U.S. 770 (1984)...........................................................................7

*Licci v. Lebanese Canadian Bank*,
    732 F.3d 161 (2d Cir. 2013)..............................................................10

*Livnat v. Palestinian Auth.*,
    851 F.3d 45 (D.C. Cir. 2017)......................................................4, 10, 12

*Mama Cares Found. v. Nutriset Société Par Actions Cimplifiée*,
    825 F. Supp. 2d 178 (D.D.C. 2011) ...................................................12

*Manifold v. Wolf Coach, Inc.*,
   231 F. Supp. 2d 58 (D.D.C. 2002) ........................................................................7

*Morris v. Khadr*,
   415 F. Supp. 2d 1323 (D. Utah 2006) ...................................................................4

*Mwani v. bin Laden*,
   417 F.3d 1 (D.C. Cir. 2005) ...................................................................................4

*Nat'l Women's Political Caucus, Inc. v. Metro. Louisville Women's Political Caucus, Inc.*,
   359 F. Supp. 3d 13 (D.D.C. 2019) .........................................................................7

*Novak-Canzeri v. Saud*,
   864 F. Supp. 203 (D.D.C. 1994) ............................................................................6

*Nowak v. Tak How Invs., Ltd.*,
   94 F.3d 708 (1st Cir. 1996) ..................................................................................11

*O'Connor v. Sandy Lane Hotel Co.*,
   496 F.3d 312 (3d Cir. 2007)............................................................................11, 12

*Pro Axess, Inc. v. Orlux Distrib., Inc.*,
   428 F.3d 1270 (10th Cir. 2005) .............................................................................7

*Rothe Dev., Inc. v. U.S. Dep't of Def.*,
   836 F.3d 57 (D.C. Cir. 2016) .................................................................................4

*Sharp Corp. v. Hisense USA Corp.*,
   292 F. Supp. 3d 157 (D.D.C. 2017) ...................................................................5, 6

*Sisso v. Islamic Rep. of Iran*,
   448 F. Supp. 2d 76 (D.D.C. 2006) .........................................................................4

*St. Jude Med., Inc. v. Lifecare Int'l, Inc.*,
   250 F.3d 587 (8th Cir. 2001) .............................................................................7, 8

*Strauss v. Crédit Lyonnais, S.A.*,
   175 F. Supp. 3d 3 (E.D.N.Y. 2016) .......................................................................7

*In re Terrorist Attacks on Sept. 11, 2001*,
   538 F.3d 71 (2d Cir. 2008)....................................................................................3

*In re Terrorist Attacks on Sept. 11, 2001*,
   714 F.3d 659 (2d Cir. 2013)..................................................................................2

iii

*Walden v. Fiore*,
   571 U.S. 277 (2014) ........................................................................................ *passim*

*Waldman v. Palestine Liberation Org.*,
   835 F.3d 317 (2d Cir. 2016)...........................................................................1, 3, 5

*Weiss v. Nat'l Westminster Bank PLC*,
   176 F. Supp. 3d 264 (E.D.N.Y. 2016) ....................................................................7

*Wultz v. Islamic Republic of Iran*,
   755 F. Supp. 2d 1 (D.D.C. 2010) ...........................................................................4

<u>S</u><small>TATUTES</small> & <u>R</u><small>ULES</small>

Justice Against Sponsors of Terrorism Act,
   Pub. L. No. 114-222, § 2(a)(7) (2016) ....................................................................4

# INTRODUCTION

Plaintiffs concede that Foreign Defendants are not subject to general jurisdiction in the United States. *See* PJ Opp. 9. They contend only that Foreign Defendants—foreign pharmaceutical and medical device companies accused of engaging in unlawful business dealings in Iraq—are nonetheless subject to specific jurisdiction because their alleged conduct was somehow either directed at or substantially connected to the United States. Neither argument has merit.

Foreign Defendants are not subject to personal jurisdiction in the United States merely because *Jaysh al-Mahdi* ("JAM") allegedly attacked U.S. forces in Iraq. *Walden v. Fiore*, 571 U.S. 277 (2014), rejected just such a theory, holding that personal jurisdiction arises only where (1) the *defendant* (not a third party) creates contacts (2) with the *forum itself* (not forum residents). Moreover, Foreign Defendants are not subject to personal jurisdiction here because Iraq (not the United States) is the "focal point of the torts alleged in this litigation." *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 340 (2d Cir. 2016). The attacks alleged to have injured Plaintiffs and Defendants' transactions with the Iraqi Ministry of Health (the "Ministry") occurred exclusively in Iraq. Those events lack any jurisdictional nexus to the United States.

Plaintiffs therefore strain to tie their claims to the United States: They allege that some products Foreign Defendants sold in Iraq were manufactured (by others) in the United States, and that Defendants paid fees on foreign letters of credit to a U.S. correspondent account. But Plaintiffs' claims do not arise out of these contacts, which they concede involved no wrongdoing.

Plaintiffs also concede that no Defendant is subject to personal jurisdiction in the District of Columbia with respect to Plaintiffs' state law claims and merely urge the Court to exercise pendent jurisdiction over those claims if the Anti-Terrorism Act ("ATA") claims survive. PJ Opp. 23. The Court should decline that invitation.

I.    **FOREIGN DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN THE UNITED STATES**

A.    **Foreign Defendants Did Not Expressly Aim Their Conduct At This Forum**

Specific jurisdiction "properly exists where the defendant took intentional, and allegedly tortious, actions . . . expressly aimed at the forum." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013).[1]  Plaintiffs contend that Foreign Defendants "expressly aimed" their conduct at the United States because some goods they sold to the Ministry were allegedly diverted by an Iraqi militia to fund attacks that harmed U.S. service members in Iraq.

*Walden v. Fiore* forecloses Plaintiffs' theory by sharply limiting the *Calder* "effects" test on which it relies.  PJ Opp. 9.  In *Walden*, the Court held that jurisdiction requires plaintiffs' cause of action to (1) "arise out of contacts that the defendant *himself* creates" (2) "with the forum . . . itself," not just with "plaintiffs whom he knew had [forum] connections."  571 U.S. at 284–85, 289.  Neither condition is met here.  Plaintiffs do not and cannot plausibly allege that Foreign Defendants—as opposed to JAM—aimed to support terrorist attacks in Iraq or that Foreign Defendants' challenged conduct targeted "the [U.S.] forum . . . itself."  *Id.*; *see, e.g.*, PJ Opp. 1–2.

Plaintiffs try to elide the distinction between Foreign Defendants and JAM, arguing that any "effects" *JAM* had in the United States are attributable to *Foreign Defendants*.  PJ Opp. 9.  But *Walden* expressly held that personal jurisdiction must be based on contacts the "defendant *himself*," not some third party, creates with the forum.  517 U.S. at 284.  Plaintiffs allege that Foreign Defendants transacted with the Ministry to gain market share in Iraq, *see* Second Am. Compl. ("SAC") ¶¶ 114–15, not to harm the United States.  Indeed, the D.C. Circuit recently held that there was no personal jurisdiction over ATA claims against a terrorist group that attacked U.S. citizens because the "planning, carrying out, and occurrence" of the attack took place in Israel, and

_____

[1] Internal quotation marks and citations have been omitted, unless otherwise noted.

the plaintiffs had not plausibly alleged that the group intended to influence U.S. policy. *Estate of Klieman v. Palestinian Auth.*, No. 15-7034, 2019 WL 2093018, at \*6–7 (D.C. Cir. May 14, 2019). It follows *a fortiori* that there is no personal jurisdiction over Foreign Defendants here, as they are alleged only to have transacted with the Ministry, and did not plan, carry out, or commit any attacks in Iraq or attempt to influence U.S. policy.

      *In re Terrorist Attacks* is also illustrative. The Saudi princes named as defendants in that case were not subject to personal jurisdiction in the United States despite allegations that they "intended to fund al Qaeda through their donations" to a Saudi charity that was "a fully integrated component" of al Qaeda. 538 F.3d 71, 76, 95 (2d Cir. 2008), *abrogated in part on other grounds by Samantar v. Yousuf*, 560 U.S. 305 (2010). It was foreseeable that this funding might aid attacks against Americans, as al Qaeda had declared war on the United States. But "foreseeability is not the standard for recognizing personal jurisdiction," *id.*; rather, "the defendant must expressly aim [its] conduct at the United States," *Waldman*, 835 F.3d at 337.

      Plaintiffs argue that, unlike the defendants in *In re Terrorist Attacks*, Foreign Defendants directly funded JAM. *See* PJ Opp. 10–11. But the allegations here are actually less direct: Foreign Defendants transacted with a government ministry that provided healthcare services to millions of Iraqis, *see* 12(b)(1) & 12(b)(6) Reply, Part III.A, not with a "fully integrated component" of al Qaeda, *see In re Terrorist Attacks*, 538 F.3d at 76, and Plaintiffs do not allege that Foreign Defendants "intended to fund" JAM, *see id.* at 95, but rather that they transacted with the Ministry to increase their market share, SAC ¶¶ 114–15. At most, Plaintiffs allege that Foreign Defendants *knew* their dealings with the Ministry would, indirectly, assist a third-party militia, *e.g.*, SAC ¶ 180, but that is an insufficient basis for personal jurisdiction. *Waldman*, 835 F.3d at 338.

      Tellingly, Plaintiffs' "effects" argument relies almost exclusively on pre-*Walden* case law,

*see* PJ Opp. 9–12, but even those cases do not support jurisdiction.  This case is nothing like *Mwani v. bin Laden*, in which the D.C. Circuit held there was jurisdiction over Osama bin Laden and al Qaeda because they *sought to attack the United States*.  417 F.3d 1, 13 (D.C. Cir. 2005).  Similarly, *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1326 (D. Utah 2006), and *Sisso v. Islamic Rep. of Iran*, 448 F. Supp. 2d 76, 89–90 (D.D.C. 2006), involved claims against defendants that sought to attack or support attacks on U.S. persons to further a terrorist campaign against the United States.[2]

      Plaintiffs' reliance on legislative findings in the 2016 amendments to the ATA is similarly misplaced.  *See* PJ Opp. 10–12.  While Plaintiffs insist that Congress intended those amendments to confer jurisdiction over claims like those alleged in the SAC, *id*. at 10 n.2, Congress cannot override the Due Process Clause or dispense with the minimum contacts it requires before a court may exercise personal jurisdiction.  Indeed, the D.C. Circuit has already rejected the argument Plaintiffs assert here, holding that "there is no indication [in the ATA] that Congress thought ordinary due-process requirements would not apply here.  And regardless, Congress cannot wish away a constitutional provision."  *Livnat v. Palestinian Auth.*, 851 F.3d 45, 53 (D.C. Cir. 2017).[3]

### B.    Plaintiffs' Claims Do Not Have A Substantial Connection To The United States And Did Not Arise Out Of Foreign Defendants' U.S. Contacts

      Unable to square their primary theory with *Walden*, Plaintiffs next argue that Foreign

---

[2] *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010), is also inapposite.  There, jurisdiction existed because the bank "transfer[red] money through one of its branches in the United States as part of the provision of financial services to the [terrorists]."  *Id.* at 36.  Plaintiffs do not allege that Defendants provided any service to the Ministry, let alone JAM, in the United States.

[3] Moreover, Congress did not attempt to dispense with the minimum contacts requirement in amending the ATA.  Plaintiffs rely on a selective reading of Congress's findings, which state that "[t]he United States has a vital interest in providing persons and entities injured as a result of terrorist attacks *committed within the United States* with full access to the court system."  Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, § 2(a)(7) (2016) (emphasis added).  In any event, legislative findings "are not an operative part of the statute."  *Rothe Dev., Inc. v. U.S. Dep't of Def.*, 836 F.3d 57, 66 (D.C. Cir. 2016).

Defendants' own U.S. contacts are sufficient to establish specific jurisdiction.  Plaintiffs identify three categories of purported U.S. contacts, alleging that Foreign Defendants (1) sold "at least some" products to the Ministry that were manufactured (by others) in the United States; (2) sourced those products (or their ingredients) from U.S. affiliates; and (3) paid lawful processing fees on foreign letters of credit to an Iraqi bank's U.S. correspondent account.  PJ Opp. 3–5.

None is sufficient to establish jurisdiction.  Plaintiffs' claims are "not really about" the sourcing of products or payment of processing fees.  *Sharp Corp. v. Hisense USA Corp.*, 292 F. Supp. 3d 157, 170–71 (D.D.C. 2017).  Rather, "this dispute is principally about [business dealings] in [Iraq] . . . regarding a contract signed between two foreign parties."  *Id.* at 171.

### 1.     That Some of the Goods Foreign Defendants Sold in Iraq Originated from U.S. Manufacturers Is Not a Basis for Jurisdiction

Plaintiffs first argue that Foreign Defendants have sufficient contacts with the United States because some goods they sold to Kimadia originated from the United States.  But Plaintiffs concede that neither the manufacture nor the sourcing of these medical products involved any wrongdoing.  *See* PJ Opp. 21.  Thus, those allegations are not the relevant suit-related conduct from which Plaintiffs' claims arise.  *See Walden*, 571 U.S. at 289 (personal jurisdiction turns on whether the "challenged conduct" had substantial connection to forum); *Waldman*, 835 F.3d at 335 (relevant suit-related conduct in ATA case is conduct "that could have subjected [defendants] to liability under the ATA"); *Sharp*, 292 F. Supp. 3d at 170–71.

Plaintiffs' argument that Foreign Defendants' sales to the Ministry "depended on" drugs and devices "that could *only* be made in America," PJ Opp. 16, is contradicted by the underlying contracts and the SAC.  Many of the contracts at issue specified goods sourced *from countries other than the United States*.  *See* PJ Mem. (ECF No. 112-1) 5–7.  And the SAC alleges that Ministry officials "insisted on contractual protections guaranteeing that drugs would be made *in*

*the proper* country of origin" because they "were suspicious of counterfeit drugs," not because they preferred U.S. over, say, European goods.  SAC ¶ 122 (emphasis added).

Moreover, Plaintiffs allege nothing more than a typical manufacturer-distributor relationship, where certain U.S.-based companies manufactured drugs and medical devices that were, in turn, distributed through a global network, some of which Foreign Defendants used to fill orders from the Ministry.  Plaintiffs allege nothing to suggest that the manufacturing of the pharmaceuticals and medical devices at issue, and their distribution in the supply chain, occurred as part of any scheme to facilitate transactions with JAM; those supply chain movements are entirely divorced from—and plainly are not substantially connected to—Plaintiffs' claims, which are about Foreign Defendants' dealings with the Ministry.[4]  *See Sharp*, 292 F. Supp. 3d at 171 (finding personal jurisdiction lacking where parties' dispute was "principally about an order entered in Singapore, by a foreign arbitrator, regarding a contract signed between two foreign parties," even though it involved television sets sold in the United States); *Novak-Canzeri v. Saud*, 864 F. Supp. 203, 206–07 (D.D.C. 1994) ("The *claim itself* must have arisen from the business transacted in the [U.S. forum] or there is no jurisdiction." (emphasis added)).[5]  Indeed, if personal jurisdiction rested on the mere fact that the "value" of a foreign transaction is "magnif[ied]" because the goods sold were originally manufactured in the United States or approved by U.S. regulators, as Plaintiffs contend, PJ Opp. 2, then personal jurisdiction would extend to countless transactions between foreign entities that involve a U.S.-made product.  Unsurprisingly, Plaintiffs

---

[4] Similarly, Plaintiffs' attempt to base jurisdiction on the fact that Foreign Defendants' U.S. affiliates sought FDA approval for the products at issue, PJ Opp. 2, is baseless.  Plaintiffs cannot allege that such regulatory approval was sought to further any transactions with the Ministry.

[5] *Novak-Canzeri* involved jurisdiction under the D.C. long-arm statute, but "the long-arm statute permits the exercise of personal jurisdiction to the full extent permitted by the Due Process Clause of the Constitution."  864 F. Supp. at 205.

(….continued)

point to no case that adopts their expansive theory of personal jurisdiction. *See id.* at 21 & n.11.[6]

Contrary to Plaintiffs' suggestion, Foreign Defendants have not argued that U.S. contacts must be "exclusive" to support specific jurisdiction, PJ Opp. 17, only that they must be *substantial* to the claims at issue. Given that many of the goods Foreign Defendants sold to the Ministry originated from outside the United States, and Plaintiffs do not allege that U.S.-manufactured products were distributed to Foreign Defendants in order to facilitate any of the allegedly unlawful transactions at issue, any purported connection between Foreign Defendants and the United States is tangential to, rather than "an integral facet of," Plaintiffs' claims. *Strauss v. Crédit Lyonnais, S.A.*, 175 F. Supp. 3d 3, 21 (E.D.N.Y. 2016).[7]

The cases that Plaintiffs cite only undermine their argument. In each, the court found jurisdiction because the claims asserted in the case arose directly out of the foreign defendant's ongoing business relationship with a forum resident. *See* PJ Opp. 13–14 & n.5. For example, *St. Jude Medical, Inc. v. Lifecare International, Inc.*, involved a claim against an out-of-forum distributor *by its in-forum manufacturer* relating to their distributorship agreement. *See* 250 F.3d 587, 590–92 (8th Cir. 2001).[8] Meanwhile, in *Helmer v. Doletskaya*, the D.C. Circuit found

---

[6] The cases cited by Plaintiffs are readily distinguishable. In *Manifold v. Wolf Coach, Inc.*, defendant's contacts with the forum (designing a defective van and selling it to an in-forum company) involved the very alleged wrongdoing from which the plaintiff's injury arose. 231 F. Supp. 2d 58, 59–60, 62–63 (D.D.C. 2002) (Leon, J.). The other cases involved suits against out-of-forum defendants for wrongful conduct expressly aimed at the forum. *See Nat'l Women's Political Caucus, Inc. v. Metro. Louisville Women's Political Caucus, Inc.*, 359 F. Supp. 3d 13, 24–25 (D.D.C. 2019); *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 114–15 (D.D.C. 2018).

[7] Plaintiffs' reliance on *Strauss* and on *Weiss v. National Westminster Bank PLC*, 176 F. Supp. 3d 264 (E.D.N.Y. 2016), is misplaced, as the alleged wrongful conduct in those cases *occurred in the forum*. Similarly, in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), the alleged libel occurred in the forum because the libelous material was circulated there. *Id.* at 776–77.

[8] *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270 (10th Cir. 2005), and *Air Products & Controls, Inc. v. Safetech International, Inc.*, 503 F.3d 544 (6th Cir. 2007), are distinguishable for the same reason.

(….continued)

jurisdiction over a "contract claim for repayment of credit card charges because the parties formed the contract in the [forum] and contemplated future repeated contacts with the [forum]." 393 F.3d 201, 203 (D.C. Cir. 2004). This case is completely different. Plaintiffs' claims do not arise from a contractual dispute between Foreign Defendants and their U.S. manufacturers, so that relationship does not constitute relevant suit-related conduct.[9] Rather, Plaintiffs' claims arise from alleged injuries *in Iraq* by an *Iraqi militia* that supposedly benefitted from contracts Foreign Defendants negotiated and performed *in Iraq* with an *Iraqi* government ministry. Plaintiffs' claims at most arise from contracts "negotiated" and "performed" in Iraq, and where "the contemplated future consequences of the contract took place" in Iraq. *Id.* at 207. As the D.C. Circuit explained in *Helmer*, such claims lack a "substantial connection" with the United States. *Id.*

### 2. Plaintiffs Cannot Base Jurisdiction on the Conduct of Separate U.S. Companies That Are Merely Affiliates of Foreign Defendants

Nor can Plaintiffs bootstrap jurisdiction based on allegations that Foreign Defendants "worked closely" with U.S. affiliates "to fulfill Kimadia's orders." PJ Opp. 13. Beyond these conclusory labels, the SAC depicts only a typical manufacturer-distributor relationship among corporate affiliates. Plaintiffs disavow any attempt to plead "an alter ego or agency relationship," contending only that jurisdiction is appropriate because U.S. affiliates were involved in manufacturing some of the goods Foreign Defendants sold, and employees of those affiliates sometimes played a (vague) role in their corporate families' global operations. *See id.* at 15.

---

[9] Plaintiffs attempt to minimize this distinction by arguing that *St. Jude* turned on the fact that the defendants committed "forum-connected tortious conduct [that] 'necessarily injured' forum residents." PJ Opp. 15. But Plaintiffs here do not allege *any* tortious conduct or direct injuries in the United States. And even if some Plaintiff family members indirectly suffered harm in the United States, the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 571 U.S. at 284.

Neither theory works.  Allegations that Foreign Defendants lawfully sourced U.S. goods do not suddenly become jurisdictionally relevant merely because those goods were manufactured by their affiliates, rather than unrelated third parties.  And alleging that employees of a U.S. affiliate played an undefined global business role unconnected to the dealings with the Ministry at issue, *see, e.g.*, SAC ¶ 324, does nothing to establish jurisdiction over Plaintiffs' claims.  Plaintiffs insist they do not need to "imput[e] jurisdictional contacts across corporate entities," PJ Opp. 15, but they attempt to do just that, and in doing so violate basic principles of corporate separateness, *see, e.g.*, *Clay v. Blue Hackle N. Am., LLC*, 907 F. Supp. 2d 85, 89 (D.D.C. 2012) (Leon, J.) (rejecting personal jurisdiction based on affiliate's domestic contacts).

Having failed to allege that Foreign Defendants and their corporate affiliates did not respect corporate formalities, Plaintiffs are unable to distinguish *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017).  Plaintiffs here—as in *Bristol-Myers*—improperly attempt to impute forum contacts to Foreign Defendants based on the "bare fact" that they "contracted" with an in-forum entity to obtain the goods at issue.  *Id.* at 1783.  The Supreme Court categorically rejected that "last ditch contention" in *Bristol-Myers*.  *Id.*

### 3.   The Alleged Payment of Lawful Processing Fees to a Third-Party U.S. Account Does Not Support Jurisdiction

Plaintiffs' attempt to base jurisdiction on fees that Foreign Defendants purportedly paid to the Trade Bank of Iraq's U.S. correspondent account fares no better.  Those payments were made to a third party separate from the Ministry to cover processing fees on foreign letters of credit to ensure payment *to Foreign Defendants*.  They were not connected to any allegedly unlawful payments*, see* SAC ¶¶ 124–26, and thus are entirely tangential to Plaintiffs' claims.[10]

---

[10] Plaintiffs argue these fees were "instrumental in facilitating the corrupt payments" because they were "memorialized in the same letters of credit that established the other deal terms."  PJ Opp. (….continued)

Plaintiffs' reliance on *Licci v. Lebanese Canadian Bank* highlights the weakness of their argument.  *See* PJ Opp. 17–18.  There, the defendants' use of U.S. correspondent accounts— *through which they knowingly wired payments to a foreign terrorist organization*—constituted the exact wrongful conduct "at which the plaintiffs' lawsuit [was] directed."  732 F.3d 161, 170–72 (2d Cir. 2013).  Here, by contrast, Foreign Defendants are not alleged to have paid these processing fees to any foreign terrorist organization or to JAM, or even to the Ministry.  Nor is Plaintiffs' suit otherwise "directed" at the payment of fees to the Trade Bank of Iraq.  *Id.*

Moreover, Plaintiffs do not even adequately allege that each Foreign Defendant paid such fees to a U.S. account.  Plaintiffs speculate that each Foreign Defendant must have done so because one Defendant purportedly did, and because the Trade Bank of Iraq has a relationship with JPMorgan, which has an office in New York.  *See* SAC ¶ 126.  But Plaintiffs ignore that JPMorgan is an international bank, New York is one of many global financial hubs, and Foreign Defendants' transactions with the Ministry routinely used correspondent accounts, including JPMorgan accounts, outside the United States.  *See, e.g.*, Mishkin Decl. (ECF No. 112-5) Exs. 4–7.  Plaintiffs respond that their allegations must be "presumed to be true," PJ Opp. 18 n.8, but their speculative and unsupported "inferences" are not entitled to that presumption, *Livnat*, 851 F.3d at 57.

### 4.      The Alleged U.S. Contacts Did Not Cause Plaintiffs' Injuries

Plaintiffs independently fail to plead personal jurisdiction because they do not allege that Foreign Defendants' U.S. contacts were the proximate cause of their injuries.  *See Beydoun v. Wataniya Rests. Holding, Q.S.C.*, 768 F.3d 499, 508 (6th Cir. 2014) (holding that "only consequences that *proximately* result from a party's contacts with a forum state will give rise to

---

18–19.  But any suggestion that these letters, rather than the contracts, "established" the "terms" of the transactions at issue is contradicted by the SAC.  *See* SAC ¶ 125.  In any event, that payment of processing fees may have been *memorialized* in a transaction document does not imply that they were *instrumental* to sales to the Ministry, let alone to alleged corrupt payments.

jurisdiction").   Even Foreign Defendants' conduct *in Iraq* did not proximately cause Plaintiffs' injuries.   12(b)(1) & 12(b)(6) Mem. Part III.A.   Their alleged conduct *in the United States* was even more causally remote.   Put simply, Plaintiffs' injuries were not directly and substantially caused by the sourcing of U.S. goods or the payment of processing fees to a U.S. account.

Unable to plead proximate cause, Plaintiffs press for a looser "but for" standard.   *See* PJ Opp. 19–20.   "But-for causation," however, "cannot be the sole measure of relatedness because . . . it 'has . . . no limiting principle; it literally embraces every event that hindsight can logically identify in the causative chain.'"   *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 322 (3d Cir. 2007) (quoting *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 716 (1st Cir. 1996)).[11]

Still, Plaintiffs' claims fail even under their preferred standard.   Plaintiffs make conclusory allegations that the U.S. origin of some of Foreign Defendants' products "enhanc[ed] the value of their corrupt payments."   PJ Opp. 20–21.   But they have not plausibly alleged that their injuries would not have occurred *but for the availability of U.S.-based goods and services*.   Indeed, they allege that Foreign Defendants regularly sold the Ministry non-U.S. goods, and that JAM procured substantial funding from sources other than the Ministry.   *See* PJ Mem. 24.

\* \* \*

Plaintiffs' arguments boil down to the position that, if any step in a distribution chain occurs in the United States—no matter how tangential or remote—it suffices for personal jurisdiction.   But Plaintiffs' theory would subject any foreign entity to jurisdiction in the United States based on the slightest connection to that forum—a result that would encourage, rather than prevent, haling foreign defendants into U.S. courts based on "attenuated [U.S.] contacts" and, thus, violate due process.

---

[11] The D.C. Circuit has left open the question of which causation standard applies in this Circuit. *Klieman*, 2019 WL 2093018, at \*7.

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *see also O'Connor*, 496 F.3d at 322.

## II.   THERE IS NO JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIMS

Plaintiffs concede that no Defendant is subject to jurisdiction in the District of Columbia with respect to their state law claims and ask only that the Court assert pendent jurisdiction over those claims if their ATA claims survive.  PJ Opp. 23.  The Court should decline to do so, as no Defendant is located in this District, and Plaintiffs' state law claims implicate the laws of 48 jurisdictions.  *See Fin. Gen. Bankshares, Inc. v. Metzger*, 680 F.2d 768, 773-78 (D.C. Cir. 1982).

## III.   PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY

As an alternative to dismissal, Plaintiffs request jurisdictional discovery.  PJ Opp. 23–25.  But "[t]he discovery rules are designed to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim," *Mama Cares Found. v. Nutriset Société Par Actions Cimplifiée*, 825 F. Supp. 2d 178, 184 (D.D.C. 2011), and the information Plaintiffs seek "would not change [the court's jurisdictional] analysis," *Livnat*, 851 F.3d at 57; *see also Klieman*, 2019 WL 2093018, at *8.  Additional contracts or letters of credit would not change the fact that alleged "sourcing" of U.S. products and payment of processing fees to the Trade Bank of Iraq are too tangential to Plaintiffs' claims.  And Plaintiffs' allegations that Foreign Defendants provided direct support to JAM, even if true, could not establish personal jurisdiction under *Walden*.  Plaintiffs allege that Foreign Defendants made unlawful payments in Iraq to benefit themselves commercially, not to harm the United States, *see* SAC ¶¶ 114–15, and so Plaintiffs fail to allege that Foreign Defendants expressly aimed their challenged conduct at the United States.  Discovery would be futile in curing this flaw.

## CONCLUSION

For the foregoing reasons, all claims against Foreign Defendants, and Plaintiffs' state law claims against the Domestic Defendants, should be dismissed for lack of personal jurisdiction.

Dated:  June 5, 2019                          Respectfully submitted,

/s/ Neil H. MacBride                          /s/ John B. Bellinger
Neil H. MacBride (D.C. Bar No. 439137)        John B. Bellinger III (D.C. Bar No. 405059)
Kenneth L. Wainstein (D.C. Bar No. 451058)    David J. Weiner (D.C. Bar No. 499806)
DAVIS POLK & WARDWELL LLP                      Robert A. DeRise (D.C. Bar No. 1005355)
901 15th Street, N.W.                          ARNOLD & PORTER KAYE SCHOLER
Washington, DC 20005                           LLP
Telephone: (202) 962-7030                      601 Massachusetts Ave., N.W.
Facsimile: (202) 962-7118                      Washington, DC 20001
neil.macbride@davispolk.com                    Telephone: (202) 942-5000
                                               Facsimile: (202) 942-5999
Paul S. Mishkin (admitted *pro hac vice*)      john.bellinger@arnoldporter.com
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue                           Robert Reeves Anderson (D.C. Bar No.
New York, NY 10017                             994989)
Telephone: (212) 450-4292                      ARNOLD & PORTER KAYE SCHOLER
Facsmile: (212) 701-5292                        LLP
paul.mishkin@davispolk.com                     370 Seventeenth Street, Suite 4400
                                               Denver, CO 80202-1370
*Counsel for Defendants AstraZeneca*           Telephone: (303) 863-2325
*Pharmaceuticals LP and AstraZeneca UK*        Facsimile: (303) 832-0428
*Limited*                                      Reeves.Anderson@arnoldporter.com

                                               *Counsel for Defendants GE Healthcare USA*
                                               *Holding LLC, GE Medical Systems*
                                               *Information Technologies, Inc., and GE*
                                               *Medical Systems Information Technologies*
                                               *GmbH*


                    (signatures continue on next page)


                                  13

/s/ Kannon K. Shanmugam
Kannon K. Shanmugam (D.C. Bar No. 474304)
Jeh C. Johnson (D.C. Bar No. 461627)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kshanmugam@paulweiss.com

John F. Baughman (D.C. Bar No. NY0254)
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
jbaughman@paulweiss.com

*Counsel for Defendants Johnson & Johnson, Cilag GmbH International, Ethicon Endo-Surgery, LLC, Ethicon, Inc., Janssen Ortho LLC, Janssen Pharmaceutica NV, Johnson & Johnson (Middle East) Inc., and Ortho Biologics LLC*

/s/ Joseph G. Petrosinelli
Joseph G. Petrosinelli (D.C. Bar No. 434280)
Christopher N. Manning (D.C. Bar No. 464069)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
jpetrosinelli@wc.com

*Counsel for Defendants Pfizer Inc., Pfizer Enterprises SARL, Pfizer Pharmaceuticals LLC, Pharmacia & Upjohn Company LLC, and Wyeth Pharmaceuticals Inc.*

/s/ John E. Hall
John E. Hall (D.C. Bar No. 415364)
Beth S. Brinkmann (D.C. Bar No. 477771)
David M. Zionts (D.C. Bar No. 995170)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street N.W.
Washington, DC 20001
Telephone: (202) 662-5987
Facsimile: (202) 778-5987
jhall@cov.com

*Counsel for Defendant F. Hoffmann-La Roche Ltd*

/s/ Patrick J. Carome
Patrick J. Carome (D.C. Bar. No. 385676)
David W. Bowker (D.C. Bar. No. 989309)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363
patrick.carome@wilmerhale.com

*Counsel for Defendants Genentech, Inc. and Hoffmann-La Roche Inc.*